1  KELLER / ANDERLE LLP
2  Jennifer L. Keller (SBN 84412)
   jkeller@kelleranderle.com
3  Chase A. Scolnick (SBN 227631)
   cscolnick@kelleranderle.com
4  Jay P. Barron (SBN 245654)
5  jbarron@kelleranderle.com
   18300 Von Karman Ave., Suite 930
6  Irvine, California 92612
7  Tel.: (949) 476-8700

8  *Counsel for Moving Party Kevin*
9  *Spacey Fowler a/k/a Kevin Spacey*

10
                    **UNITED STATES DISTRICT COURT**
11
                    **CENTRAL DISTRICT OF CALIFORNIA**
12

13  KEVIN SPACEY FOWLER a/k/a      )  Case No.  2:22-mc-00030
14  KEVIN SPACEY,                  )
                                   )  *Pending in the Southern District of*
15           Moving Party,         )  *New York, Case No. 1:20-cv-09586-LAK*
                                   )
16       v.                        )  **JOINT STIPULATION REGARDING**
                                   )  **MOVING PARTY'S MOTION TO**
17                                 )  **COMPEL AND FOR CONTEMPT RE**
                                   )  **ADAM VARY'S DEPOSITION AND**
18  ADAM VARY                      )  **SUBPOENA FOR PRODUCTION OF**
19                                 )  **DOCUMENTS**
             Responding Party.     )
20                                 )
                                   )  Judge:  TBD
21                                 )  Hearing Date:  March 2, 2022
22                                 )  Hearing Time: 9:30 a.m.
                                   )
23                                 )  Discovery Cutoff Date:  January 18, 2022
24                                 )  Pretrial Conference Date:  N/A
                                   )  Trial Date:  February 18, 2022
25  _____)

26

27

28

---
JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1

## **TABLE OF CONTENTS**

I.   INTRODUCTORY STATEMENTS ..................................................1

   A.   Moving Party Kevin Spacey Fowler's Introductory
      Statement Pursuant To C.D. Cal. Local Rule 37-2.1 ..............1

   B.   Responding Party Adam Vary's Introductory Statement
      Pursuant to C.D. Cal. Local Rule 37-2.1 ...............................3

II.  MR FOWLER'S BRIEF SUMMARY OF DISCOVERY AT
    ISSUE ............................................................................................6

   A.   Adam Vary Refused To Answer Questions At Deposition ......6

   B.   Document Subpoenas To Adam Vary........................................7

   C.   Counsel for the Parties Complied With Local Rule 37-1 Pre-
      Filing Conference .....................................................................7

III. MR. VARY'S RESPONSE TO MR. FOWLER'S "BRIEF
    SUMMARY OF DISCOVERY AT ISSUE"...................................8

IV.  MR. VARY'S DEPOSITION ..........................................................8

   A.   Specific Deposition Conduct At Issue ......................................8

   B.   Moving Party Mr. Fowler's Statement...................................35

      1.   Mr. Vary's Objections Based On Qualified Protection
          Under the First Amendment Are Without Merit ...........35

      2.   Mr. Vary's Objections Based on California's
          Reporter's Shield Law Do Not Justify His
          Withholding of Discovery, Nor Has He Shown
          California's Shield Law Applies Here.............................39

      3.   Vary's Other Objections Are Without Merit..................41

   C.   Responding Party Vary's Statement: ......................................41

      1.   Fowler's Entire Motion Is Untimely..............................41

      2.   Fowler Did Not Comply with Local Rule 37-2.1...........43

      3.   Fowler's Motion Suffers Numerous Procedural
          Defects........................................................................43

      4.   Vary Only Declined to Answer Questions That
          Related to His Role as a Journalist.................................44

      5.   California Law Applies and Shields Vary from
          Further Deposition Testimony. ......................................45

          a.   California Law Provides Reporters Like Vary
              with *Absolute* Protection in a Civil Case................45

i

|   |   |   | b. | Contrary to Fowler's Contentions, California's Shield Law Applies Here, Not New York's. | 48 |

| | | | | i. | *Under Rule 45, the Laws of this Court Govern.* | 48 |

| | | | | ii. | *California Has a Greater Interest in Enforcing its Shield Law.* | 50 |

| | | | c. | Vary Did Not Waive Any Rights. | 52 |

| | | 6. | Vary Is Also Protected under the First Amendment. | 53 |

| | | | a. | Fowler's Deposition Questions About Vary's Newsgathering Are Not "Clearly Relevant." | 56 |

| | | | b. | Fowler Does Not Show He Has Exhausted Alternative Sources. | 57 |

| | | | c. | Fowler Failed to Show That the Requested Information Would Not Be Cumulative. | 58 |

| | | 7. | Vary Is Further Protected by the Common Law. | 58 |

| V. | | DOCUMENT SUBPOENA | 61 |

| | A. | Document Request No. 1 | 61 |

| | B. | Document Request No. 2 | 66 |

| | C. | Document Request No. 3 | 68 |

| | D. | Document Request No. 4 | 70 |

| | E. | Document Request No. 5 | 72 |

| | F. | Document Request No. 6 | 75 |

| | G. | Document Request No. 9 | 77 |

| | H. | Document Request No. 11 | 79 |

| | I. | Document Request No. 12 | 81 |

| | J. | Document Request No. 13 | 83 |

| | K. | Document Request No. 14 | 85 |

| | L. | Document Request No. 15 | 88 |

| | M. | Document Request No. 16 | 90 |

| | N. | Document Request No. 17 | 92 |

| | O. | Document Request No. 18 | 94 |

| | P. | Document Request No. 19 | 96 |

| | Q. | Document Request No. 20 | 98 |

ii

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

R.    Document Request No. 21 .................................................................101

S.    Document Request No. 26 .................................................................103

T.    Document Request No. 27 .................................................................105

U.    Document Request No. 28 .................................................................107

V.    Document Request No. 29 .................................................................109

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1

**JOINT STATEMENT**

2      Pursuant to Federal Rules of Civil Procedure 37 and 45, and C.D. Cal. Local Rule

3   37-1 *et seq*., plaintiff Kevin Fowler a/k/a Kevin Spacey Fowler ("Mr. Fowler" or

4   "Moving Party") and non-party deponent Adam Vary ("Mr. Vary") have met and

5   conferred regarding discovery of documents and information sought by Mr. Fowler's

6   Subpoena to Testify at a Deposition in a Civil Action ("Deposition Subpoena") and

7   Subpoena to Produce Documents, Information, or Objects, or to Permit Inspection of

8   Premises in a Civil Action ("Document Subpoena," and collectively with the Deposition

9   Subpoena, the "Subpoenas").  Mr. Fowler and Mr. Vary have been unable to reach an

10  agreement at this time, and respectfully submit their positions.

11  **I.      INTRODUCTORY STATEMENTS**

12        **A.      Moving Party Kevin Spacey Fowler's Introductory Statement
              Pursuant To C.D. Cal. Local Rule 37-2.1**

13       This discovery dispute concerns a civil lawsuit pending in federal court in the

14  Southern District of New York.  The case was brought in late 2020 by plaintiff Anthony

15  Rapp ("Rapp") alleging assault, battery, and intentional infliction of emotional distress

16  against Mr. Fowler.  The lawsuit is nearing trial, with pretrial documents signaling the

17  case is "ready for trial" being due February 18, 2022.  As an initial matter, Mr. Fowler

18  respectfully requests that the Court transfer this dispute to the Southern District of New

19  York under Federal Rule of Civil Procedure 45(f).  Such transfer would promote judicial

20  economy and efficiency because the trial judge in the Southern District of New York,

21  The Honorable Lewis Kaplan, is intimately familiar with the facts and history of this

22  case, and it is rapidly approaching trial.

23       Rapp's claims all are based on an alleged incident in approximately 1986 when

24  Mr. Fowler purportedly picked up Rapp, lifted him onto a bed, and laid on top of him.

25  Rapp has acknowledged Mr. Fowler's alleged "sexual advance" involved no touching of

26  genitals, no kissing, no undressing of either Rapp or himself or any attempt to do so, and

27  no sexualized statements or other statements suggesting an intent to engage in any such

28  conduct.  Mr. Fowler categorically denies the allegations.

Rapp's claims were initially publicized in a *Buzzfeed* article published on October 29, 2017 and written by Rapp's longtime friend, Adam Vary.  During discovery, Mr. Fowler served Mr. Vary with deposition and documents subpoenas seeking information about his communications with Rapp since they became friends over twenty years ago, the preparation and circumstances of the *Buzzfeed* articles, and related matters.  In particular, Rapp produced texted messages with Mr. Vary which showed that Rapp initially told Mr. Vary a version of his story that had demonstrably false details.  Those details were omitted or corrected in the final article, apparently as part of an express or implied understanding that Rapp would provide his story to his friend if Mr. Vary sanitized the article to protect Rapp from scrutiny for his inconsistencies and false details.

But during his deposition, and in response to the records subpoena, Mr. Vary refused to answer questions, about any communication with Rapp other than what was explicitly published in Mr. Vary's 2017 Buzzfeed article or a follow-up article in 2018. Mr. Vary followed his counsel's instruction not to answer questions about Mr. Vary's conversations with Rapp, Mr. Vary's investigation or view of Rapp's allegations, or even foundational issues related to Mr. Vary's vetting of Rapp's claims (or his failure to factcheck them).  Mr. Vary further refused to answer whether he deliberately altered or omitted demonstrably false details of Mr. Rapp's account when seeking comment from Mr. Fowler.  Mr. Vary also produced no documents in response to the records subpoena and even acknowledged he did not even attempt to look for any documents responsive to the subpoena.

To justify his refusal to provide discovery, Mr. Vary relied primarily on a qualified "reporter's privilege" under the First Amendment and a "reporter's shield" under California law.  But neither applies here.  As an initial matter, the only possible application of either doctrine applies to a narrow set of circumstances that Mr. Vary has not demonstrated apply here, or at least not to each question and document request.

Even if there were protection under the First Amendment, the protection is qualified, and it must give way when the requested material is unavailable despite efforts

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

to obtain it elsewhere, is noncumulative, and is clearly relevant to an important issue in the case. Here, all of these factors are present. Rapp's credibility and the details of his allegations are critical issues that will be the focus of the upcoming trial. Mr. Fowler has deposed and taken written discovery from Rapp but Rapp has testified he does not recall all details of what he told Mr. Vary. The only way to obtain that critical evidence is from Mr. Vary and any notes, recordings, or other documents he may have in his possession.

Likewise, California's reporter's shield law does not apply. If anything, New York's reporter's shield applies because New York has a greater interest in this case, given the case is pending there, New York law applies to the dispute, Rapp is a citizen in New York, and Buzzfeed – which published Mr. Vary's articles at issues – is located in New York. And New York's reporter's shield provides only qualified protection similar to that under the First Amendment test described above. And, finally, even if California's "absolute" reporter's shield law were to apply, it still have been found not to apply where it impedes a criminal defendant's rights. Because Rapp's claims are premised on conduct he must show constitutes criminal conduct under New York's penal law, the same balancing test should apply and weigh in favor of disclosure.

Mr. Fowler therefore respectfully requests that the Court grant his motion and find Mr. Vary to be in contempt unless he sits for a supplemental deposition to answer the question he previously refused to answer (plus all reasonable follow up questions) and produces documents in response to the requests in the documents subpoena.

## B. Responding Party Adam Vary's Introductory Statement Pursuant to C.D. Cal. Local Rule 37-2.1

Non-party Adam Vary is a journalist, and his only connection to this case is in his capacity as a journalist. In 2017, Vary authored an article for his former employer *BuzzFeed* about famous actor Kevin Spacey Fowler's (p/k/a Kevin Spacey) sexual advance on actor Anthony Rapp, who was only 14 years old at the time. Jassy Decl. ¶ 3, Ex. 10; *see also* Jassy Decl. ¶ 2; *id.*, Ex. 11 at 70:7-11, 77:17-90:16, 90:2-93:22 (Vary work history). Fowler did not claim that Vary's article was false in any way; rather,

1   Fowler tweeted that he did not remember the encounter with Rapp, and apologized for
2   "what would have been deeply inappropriate drunken behavior." Ex. 10 at 4.  Four years
3   later, Fowler issued three document subpoenas (each with at least 29 requests for
4   production), and deposed Vary for more than seven hours.  Jassy Decl. ¶¶ 4-5.  Now,
5   *after* the discovery cut-off and *after* the ready date for the start of trial, Fowler wants to
6   depose Vary again—this time with the specific goal to invade his journalistic processes
7   and unpublished information.  On several grounds, this motion should fail.

8   As a preliminary matter, Fowler's motion is procedurally defective for many reasons: (1)
9   it is late—filed after the discovery cut-off, to be heard after the trial ready date; (2) it fails
10  to comply with L.R. 37-1, 37-2.1, and L.R. 37-3; and (3) it suffers other procedural
11  defects enumerated below.  Fowler makes a passing request to transfer this motion, but
12  the motion must be heard in "the district where compliance is required" – *i.e.*, in this
13  Court – unless Vary consents (he does not) or there are "exceptional circumstances."
14  F.R.C.P. 45(d)(2)(B)(i).  Fowler articulates no such "exceptional circumstances."

15      The motion also fails for substantive reasons.  The premise of Fowler's motion is
16  also its fundamental defect—Fowler seeks unpublished newsgathering and reporting
17  information, which is protected from disclosure under state, federal and common law.
18  California's Constitution provides an unqualified *absolute* protection from disclosure in
19  civil cases.  Fowler has no competing constitutional right that can overcome Vary's right
20  to keep his unpublished information confidential.  Fowler incorrectly asserts that New
21  York, not California law, should apply to this discovery dispute.  A basic conflict of law
22  analysis proves this wrong.  Vary is, and at all relevant times was, a California resident,
23  and California has a strong interest in protecting the constitutional rights of its citizens.[1]
24  In another desperate attempt to avoid California law, Fowler claims, in a motion brought
25  under Federal Rule of *Civil* Procedure 45, that this is not really a civil case.  Nonsense.
26  When Fowler's counsel was asked in the meet and confer process, "If Fowler loses this

27
28
---
[1] Fowler notes that Rapp is in New York, but the subpoenas were not directed to Rapp.  Nor were the subpoenas directed to BuzzFeed, Vary's *former* employer.

civil case that would mean that he is a criminal?," his counsel candidly replied: "Of course not." He faces no *criminal* liability at all. Because this is a civil case, with Rapp asserting civil claims of assault, battery, and intentional infliction of emotional distress, California law completely insulates Vary from having to share any unpublished information.

Vary is also protected by the Ninth Circuit's qualified First Amendment reporter's privilege. To overcome that privilege, it is Fowler's burden to show that each piece of information or document he seeks is clearly relevant to his case, not cumulative, and unavailable from any other sources. Fowler glosses over this burden in a general way, and makes *no effort* to show he can satisfy it as to *each* deposition question and *each* document demand. Unpublished information about Vary's work is not clearly relevant to this case. This case is not about the veracity of Vary's articles or Vary's state of mind. In many of his questions, Fowler's counsel simply asserted that some fact was incorrect or unaccounted for, and then demanded to know why it was not published in Vary's articles. Much of the requested information could be sought from other sources, including the very sources that Fowler is asking about, such as a Mr. Barrowman. To the extent Fowler's point is that Rapp has discrepancies in his story, that can be proven (or not) without piercing Vary's privilege, and anything Vary might (or might not) offer would be cumulative.

As to the Deposition Subpoena, Fowler wants Vary to testify about *unpublished* information about Vary's journalistic techniques, sources and interviews specifically concerning his reporting on the Fowler matter. Almost every time Vary's counsel made an objection/instruction on reporter's shield/privilege grounds, Vary's counsel only made it "to the extent" the question called for *unpublished* information, but consistently noted that Vary could "otherwise answer the question." And Vary did just that. As Fowler acknowledges—Vary already testified in deposition about *published* information. He did not indiscriminately refuse to answer seven hours of questioning. He did not move to quash the entire subpoena. He only declined to answer where he determined

that it would invade the protections afforded him as a journalist.  In addition to testifying about published information, he also testified about information separate from his news reporting—*e.g.*, concerning his friendship with Rapp, BuzzFeed's finances and communications with Rapp's counsel.

Vary drew consistent lines for the Document Subpoena: (1) he offered published articles concerning Fowler, but they were rejected; (2) he produced his limited communications with Rapp's counsel; (3) he would *not* produce unpublished newsgathering information because of the reporter's privilege/shield; and (4) he would not undertake to search for or produce irrelevant documents – *i.e.,* documents that did not relate to Fowler, Rapp and the allegations in this case – unless Fowler could articulate a reason they were relevant, which did not happen.  Fowler also insists on a privilege log even though Vary already explained categorically what was being withheld pursuant to the reporter's privilege, and Fowler ignored Vary's authorities exempting non-parties from preparing logs under such circumstances.

Fowler's counsel was obligated to take "reasonable steps to avoid imposing undue burden or expense" on a subpoenaed non-party.  FRCP 45(d)(1).  Instead, Fowler continues to harass Vary.  Vary requests that Fowler's motion be denied in full, and that $18,000 in fees and costs be awarded to Vary.

## II.    MR FOWLER'S BRIEF SUMMARY OF DISCOVERY AT ISSUE

### A.    Adam Vary Refused To Answer Questions At Deposition

Adam Vary was deposed remotely on December 16, 2021.  One focus of the deposition was Mr. Vary's discussions with Rapp in October 2017 when Rapp contacted Mr. Vary about doing a story about Rapp's allegations against Mr. Fowler. Mr.  Vary's initial article on the subject was published on October 29, 2017 by *Buzzfeed*.  Mr. Vary also did a follow up article in 2018 for which he also spoke with Rapp.

During the deposition, Mr. Vary's counsel instructed him not to answer, and Vary refused to answer, questions about Rapp's communications with Vary other than what

was expressly published in Mr. Vary's articles. The full questions, objections, and instructions not to answer are set forth in Section III below.

### B.  Document Subpoenas To Adam Vary

Besides the oral deposition, Rapp also separately subpoenaed documents from Mr. Vary. Mr. Fowler's initial document subpoena was issued on November 4, 2021. Following discussions with counsel, Mr. Fowler issued a second subpoena on December 6, 2021, calling for production of documents shortly before Mr. Vary's deposition. Mr. Vary produced no documents at his deposition.

After the deposition, during the parties' meet and confer, Mr. Vary's counsel reiterated an objection that the subpoena had been issued on letterhead from this Court, rather than the Southern District of New York where this action is pending. On December 29, 2021, Mr. Fowler responded to that perceived concern by re-issuing and re-serving a documents subpoena issued by the Southern District of New York ("Records Subpoena"). That subpoena also dropped one of the document requests. On January 12, 2022, Mr. Vary objected to that subpoena. Mr. Vary's objections set forth the same objections. He produced no documents.

The document requests in the Records Subpoena, Mr. Vary's objections to them, and each party's position on them is set forth below.

### C.  Counsel for the Parties Complied With Local Rule 37-1 Pre-Filing Conference

On December 29, 2021, Mr. Fowler's counsel sent a letter to Mr. Vary's counsel to initiate a meet and confer under C.D. Cal. Local Rule 37-1. See Scolnick Decl., Ex. 6. Vary's counsel responded in writing on January 5, 2022. *Id*., Ex. 7. Under Local Rule 37-1, counsel for the parties had a telephonic meet and confer on January 10, 2022. *Id*., ¶ 8. Counsel also had a conference on January 18, 2022. *Id*., ¶ 8. The parties could not resolve this discovery dispute.

III.    **MR. VARY'S RESPONSE TO MR. FOWLER'S "BRIEF SUMMARY OF DISCOVERY AT ISSUE"**

Vary objects to, and moves to strike, Fowler's "Brief Summary of Discovery at Issue" as an improper and overlong extension of Fowler's introductory statement in violation of Local Rule 37-2.1.

IV.    **MR. VARY'S DEPOSITION**

A.    **Specific Deposition Conduct At Issue**

These excerpts of testimony show the deposition questions, objections, instructions, and limited responses, at issue on this motion:[2]


1.    Page 21, Line 16 to Page 22, Line 21

16    Q.  And why did you reach out to Mr. Rapp over the
17    summer?
18    A.  There were reports that Kevin Spacey had been
19    performing in a big feature film, and a colleague at
20    Variety was writing about that, and I had been asked to
21    ask if Anthony had comment on that -- for that story.
22    Q.  And did Anthony have comment on that story?
23    A.  He did not.
24    Q.  Did Mr. Rapp discuss Mr. Fowler with you on
25    that call?
00022
1      MR. JASSY:  Objection.  To the extent -- Madam
2    Court Reporter, can you hear me okay?
3      DEPOSITION OFFICER:  Yes.
4      MR. JASSY:  Okay.  I'm going to start a
5    standing objection here because I have a feeling this
6    may come up again, Mr. Scolnick.  I'm going to object on
7    the basis of the reporter's shield and the reporter's
8    privilege.  And what I mean by that is the privilege and
9    the shield that's rooted in the 1st and 14th Amendments
10   of the United States Constitution, the Article I,

---

[2] The relevant pages of Mr. Vary's deposition transcript are attached as an Exhibit to the Declaration of Chase Scolnick.  Mr. Fowler respectfully requests that Mr. Vary be ordered to sit for another deposition to answer all of these questions, plus reasonable follow up questions.  Vary, who already sat for over seven hours of deposition, opposes Fowler's request.

11   Section 2 of the California Constitution, Section 1070
12   of the California Evidence Code, Rule 501 of the Federal
13   Rules of Evidence, state analogs and other states, for
14   example, New York, and also the common law.
15       And so I'm going to assert the -- to that last
16   question the reporter's privilege and the reporter's
17   shield and instruct the witness not to answer to the
18   extent that it would call for or require the disclosure
19   of information obtained or sought to be obtained or
20   gathered in the course of news-gathering.  But if he can
21   answer -- revealing such information, he may do so.

2.    Page 40, Lines 4 to 12

4    Q.  Why did you suggest using Signal to communicate
5   with Mr. Rapp?
6        MR. JASSY:  Objection.  Reporter's shield.
7   Reporter's privilege.  It calls for unpublished
8   news-gathering information.
9        I instruct the witness not to answer, unless he
10  feels he's able to do so.
11       THE WITNESS:  I am following my attorney's
12  advice not to answer.

3.    Page 42, Lines 5 to 12

5    Q.  What, if anything, did you do to search for
6   responsive documents to this request?
7        MR. JASSY:  Objection.
8        To the extent it calls for the disclosure of
9   attorney-client privileged information, I instruct the
10  witness not to answer.
11       THE WITNESS:  Following my attorney's advice
12  not to answer.

4.    Page 48, Lines 9 to 23

9    Q.  After the initial off-the-record conversation
10  you had with Mr. Rapp about Mr. Fowler, you had
11  additional conversations with Mr. Rapp about Mr. Fowler;
12  correct?

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13    A.  Yes.
14    Q.  And in any of those subsequent conversations,
15  did Mr. Rapp tell you that the communications about
16  Mr. Fowler were confidential?
17       MR. JASSY:  Objection.  Calls for the
18  disclosure of unpublished information and -- on the
19  basis of the reporter's shield and reporter's privilege.
20       And instruct the witness not to answer, unless
21  he's otherwise able to do so.
22       THE WITNESS:  Based on my -- my counsel's
23  advice, I'm not answering that question.

5.    Page 64, Line 20 to Page 66, Line 1

20    Q.  Have you ever spoken with Mr. Rapp about the
21  content of his book?
22       MR. JASSY:  Objection to the extent it calls
23  for the disclosure of unpublished news-gathering
24  information.  I object on the grounds of the reporter's
25  privilege and the reporter's shield.
00065
1       And I instruct the witness not to answer,
2  unless he may otherwise do so.
3       THE WITNESS:  Prior to 2017 I probably told him
4  that I found the book very moving and enjoyed it.  I
5  don't recall saying to him much more -- anything more
6  than that.
7  BY MR. SCOLNICK:
8    Q.  And you separated that out to prior to 2017.
9       Why was that?
10       MR. JASSY:  Well, same objection and
11  instruction as the last question.
12       THE WITNESS:  I refer -- I will -- in response
13  to the -- your most recent question, I am following my
14  attorney's advice not to respond.
15  BY MR. SCOLNICK:
16    Q.  Have you ever written a story about Mr. Rapp's
17  book?
18    A.  I don't recall ever doing that.
19    Q.  Did you ever intend to write a story about
20  Mr. Rapp's book?
21       MR. JASSY:  Objection.  Calls for the
22  disclosure of reporter's shield or reporter's privilege

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23  information.
24      Instruct the witness not to answer.
25      THE WITNESS:  I'm following my attorney's
00066
 1  advice and not answering.


6.    Page 119, Lines 4 to 13

 4    Q.  Did you intentionally omit any details of
 5  Mr. Rapp's account and allegations in your story?
 6      MR. JASSY:  Objection.  To the extent that it
 7  calls for the disclosure of unpublished material, object
 8  on the basis of the reporter's privilege and the
 9  reporter's shield.
10      Instruct the witness not to answer.  He may
11  answer, if he believes he can.
12      THE WITNESS:  On advice of my attorney, I'm not
13  answering that question.


7.    Page 120, Line 22 to Page 121, Line 9

22    Q.  So Mr. Rapp provided you a detail about the
23  last time he had seen Mr. Fowler; right?
24    A.  Yes.
25    Q.  You determined that detail was not accurate;
00121
 1  right?
 2      MR. JASSY:  Objection.
 3      To the extent that it calls for the disclosure
 4  of unpublished information.  Instruct the witness not to
 5  answer.  Otherwise, he can answer the question.
 6      Objection is based on the reporter's privilege
 7  and the reporter's shield.
 8      THE WITNESS:  On my attorney's advice, I'm not
 9  answering the question.


8.    Page 121, Line 22 to Page 122, Line 17

22    Q.  Okay.  So Mr. Rapp told you that the last time
23  he had seen Spacey was at the 2008 Tonys.  You
24  determined that Mr. Spacey did not present at the 2008

11

25  Tonys; right?
00122
1        MR. JASSY:  Object to the extent that it calls
2  for disclosure of unpublished information, based on the
3  reporter's privilege and the reporter's shield.
4        I instruct the witness not to answer, unless he
5  feels he can.
6        THE WITNESS:  We published that Kevin Spacey
7  and Anthony Rapp were at the 1999 Tony Awards.
8  BY MR. SCOLNICK:
9     Q.  Even though Mr. Rapp initially told you that he
10  and Mr. Fowler were at the 2008 Tony Awards; correct?
11        MR. JASSY:  Objection based on the reporter's
12  privilege and the reporter's shield because it's asking
13  for unpublished information.
14        To that extent, I instruct the witness not to
15  answer, unless he's able to.
16        THE WITNESS:  By attorney's advice, I'm not
17  answering that question.


9.    Page 123, Line 12 to Page 124, Line 21

12     Q.  And you were writing that to protect Mr. Rapp
13  from being contradicted about an inaccurate statement
14  that he made to you; right?
15        MR. JASSY:  Objection.
16        MR. SAGHIR:  Objection.
17        MR. JASSY:  Peter, if you want make your
18  objection, then I'll make mine.
19        MR. SAGHIR:  Yeah.  Just objection as --
20  objection as the question -- the statement
21  mischaracterizing testimony.
22        MR. JASSY:  That's right.  In -- I guess under
23  the New York rules, he can just object as to form;
24  right?  But I'll -- I'll go -- I'll go a little further.
25  Objection to the extent that it calls for the disclosure
00124
1  of unpublished information.  And the objections on the
2  basis of the reporter's shield and the reporter's
3  privilege.
4        Instruct the witness not to answer to that
5  extent.  Otherwise, he can answer.
6        And I also object that the question's

7   argumentative.
8        THE WITNESS:  On the advice of my attorney, I
9   am declining to answer that question.
10  BY MR. SCOLNICK:
11       Q.  Okay.  Let me phrase it a little differently.
12       Were you trying to protect Mr. Rapp from being
13  contradicted publicly?
14       MR. JASSY:  Objection.  Same objections.
15  Argumentative.  Reporter's shield.  Reporter's
16  privilege.
17       And to the extent that it calls for unpublished
18  information.  Instruct the witness not to answer; but he
19  can if he's otherwise able to.
20       THE WITNESS:  On advice of my attorney, I'm not
21  answering.

10.    Page 128, Line 23 to Page 129, Line 6

23       Q.  Did Mr. Rapp ever tell you why he came to you
24  with this story?
25       MR. JASSY:  Objection.  Reporter's privilege.
00129
1   Reporter's shield.
2        To the extent it calls for unpublished
3   information, I instruct the witness not to answer.
4   Otherwise, he may do so.
5        THE WITNESS:  On the advice of my attorney, I'm
6   not responding to that question.

11.    Page 140, Lines 8 to 18

8        Q.  Mr. Vary, didn't Mr. Rapp tell you that another
9   media outlet was trying to scoop you on this story in
10  October of 2017?
11       MR. JASSY:  Objection.  To the extent it calls
12  for the disclosure of unpublished information, I object
13  on the basis of reporter's privilege and the reporter's
14  shield.
15       And I instruct the witness not to answer.
16  Otherwise, he may do so.
17       THE WITNESS:  On advice of my attorney, I am
18  not answering that question.

12.    Page 141, Lines 16 to 25

16    Q.  Okay.  So you were discussing with Mr. Rapp the
17   potential that you'd be scooped on his allegations
18   against Mr. Fowler in October; right?
19        MR. JASSY:  To the extent it calls for
20   disclosure of information not published -- the public, I
21   object on the basis of the reporter's privilege and the
22   reporter's shield and instruct the witness not to
23   answer.  Otherwise, he may do so.
24        THE WITNESS:  On the advice of my attorney, I'm
25   not answering that question.


13.    Page 142, Line 7 to Page 145, Line 2

7    Q.  Turning to Page -- Page 31 of Exhibit 103.
8   Thirty-two.  I'm sorry.  We talked about this exchange
9   earlier.  And I wanted to focus on the last sentence of
10   the top exchange that you have with Mr. Rapp.
11        And you told Mr. Rapp that, quote, Similarly,
12   we're also going to steer away from exact specificity in
13   the story for the party.
14        Did I read that correctly?
15    A.  You did.
16    Q.  And what you're referring to is your decision
17   to not include specific details about the party at which
18   Mr. Rapp made his allegations; correct?
19        MR. JASSY:  Objection.  To the extent it calls
20   for the disclosure of unpublished information, I object
21   on the basis of the reporter's privilege and the
22   reporter's shield.
23        And I instruct the witness not to answer,
24   unless he may otherwise do so.
25        THE WITNESS:  On the advice of my attorney, I'm
00143
1   not answering.
2   BY MR. SCOLNICK:
3    Q.  Mr. Vary, were you trying to omit details from
4   your story that Mr. Fowler or anyone in the public could
5   see were inaccurate with Mr. Rapp's story?
6        MR. JASSY:  Objection.  Vague.
7        And to the extent that it calls for the
8   disclosure of unpublished information protected by the

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9   attorney -- excuse me -- the reporter's privilege and
10  the reporter's shield, I instruct the witness not to
11  answer.  Otherwise, he may do so.
12        THE WITNESS:  On the advice of my attorney, I
13  am not answering that question.
14  BY MR. SCOLNICK:
15      Q.  Were you attempting to omit details in your
16  article regarding Mr. Rapp's account of his allegations
17  against Mr. Fowler to protect Mr. Rapp from being
18  contradicted publicly?
19        MR. JASSY:  Objection.  Asked and answered.
20  And I object on the basis of the reporter's privilege
21  and the reporter's shield and instruct the witness not
22  to answer on the grounds that it's unpublish -- calling
23  for unpublished information.  But if he can answer, he
24  may do so.
25        THE WITNESS:  On the advice of my attorney, I'm
00144
 1  not answering that question.
 2  BY MR. SCOLNICK:
 3      Q.  What specific details about Mr. Rapp's
 4  allegations against Mr. Fowler did you decide to steer
 5  away from in your article?
 6        MR. JASSY:  Objection.
 7        To the extent it calls disclosure of
 8  unpublished information protected from disclosure by the
 9  reporter's shield and the reporter's privilege, I
10  instruct the witness not to answer.  Otherwise, he may
11  do so.
12        And it lacks foundation.
13        THE WITNESS:  On the advice of my attorney, I'm
14  not answering that question.
15  BY MR. SCOLNICK:
16      Q.  Did you intend to omit specific details of
17  Mr. Rapp's allegations in your article so that
18  Mr. Fowler could not fairly respond to the allegations?
19        MR. JASSY:  Objection.  Lacks foundation.
20  Misleading.  Argumentative.  And to the extent it calls
21  for the disclosure of unpublished information, I object
22  on the basis of the reporter's privilege and the
23  reporter's shield.
24        And instruct the witness not to answer.
25  Otherwise, he may do so.
00145

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1    THE WITNESS:  Advice of my attorney, I am not
2  answering that question.

14.    Page 146, Lines 2 to 13

2    Do you recall Mr. Rapp voicing any objection to
3  you changing any of the details that he told you?
4    MR. SAGHIR:  Objection.  Argumentative.
5  Assuming facts not in evidence.  And mischaracterizing
6  testimony.
7    MR. JASSY:  Lacks foundation.  And to the
8  extent it calls for disclosure of unpublished
9  information, I invoke the reporter's privilege and the
10  reporter's shield and instruct the witness not to
11  answer.  Otherwise, he may do so.
12    THE WITNESS:  I -- on advice of my attorney,
13  I'm not answering that question.

15.    Page 147, Lines 6 to Page 148, Line 1

6    My question was, Did Mr. Rapp object to you
7  omitting any details from his account before you
8  published?
9    MR. SAGHIR:  Objection.  No foundation.
10    MR. JASSY:  Same objections as the last
11  question.  And same instruction.
12    THE WITNESS:  On the advice of my attorney, I'm
13  not answering that question.
14  BY MR. SCOLNICK:
15    Q.  Okay.  Did you believe in October 2017 that it
16  would be more difficult for Mr. Fowler to defend himself
17  or respond to these allegations if you omitted certain
18  details from Mr. Rapp's account?
19    MR. JASSY:  Objection.  Lacks foundation.
20  Argumentative.  Calls for speculation.
21    And to the extent that it seeks unpublished
22  information, object on the basis of the reporter's
23  shield and the reporter's privilege.  Instruct the
24  witness not to answer.  Otherwise, he may do so.
25    THE WITNESS:  On the advice of my attorney, I'm
00148
1  not answering that question.

16.    Page 149, Lines 8 to 19

    8   Q.  Okay.  So you were letting Mr. Rapp know that
    9  you had reached out to Mr. Fowler's team that Saturday;
 10  right?
 11      MR. JASSY:  Objection.  Best Evidence Rule.
 12  And it misstates prior testimony.  And it's misleading.
 13      And to the extent that it calls for the
 14  disclosure of unpublished information.  Instruct the
 15  witness not to answer on the grounds of the reporter's
 16  privilege and the reporter's shield.  Otherwise, he may
 17  do so.
 18      THE WITNESS:  On the advice of my attorney, I'm
 19  not answering that question.


17.    Page 157, Line 13 to Page 158, Line 12

 13      My question to you, to be very specifically --
 14  excuse me -- very specific, is, Was it or was it not
 15  important to you in October 2017 that you accurately
 16  conveyed to Mr. Spacey's team the allegations as
 17  Mr. Rapp told them to you?
 18    A.  On the advice of my --
 19      MR. JASSY:  Hang on.
 20      Objection.  Asked and answered.  Same
 21  objection.  Same instructions as the last two questions.
 22      THE WITNESS:  On advice of my attorney, I'm not
 23  answering that question.
 24  BY MR. SCOLNICK:
 25    Q.  Did you accurately convey the content of the
 00158
  1  allegations that Mr. Rapp provided to you?
  2      MR. JASSY:  Objection.  Vague.
  3      MR. SAGHIR:  Objection.
  4      MR. JASSY:  To the extent that it calls for the
  5  disclosure of information protected from disclosure by
  6  the reporter's shield and the reporter's privilege,
  7  instruct the witness not to answer.  Otherwise, he can
  8  answer the question.
  9      MR. SAGHIR:  Join.  Objection.  Vague.
 10  Overbroad.
 11      THE WITNESS:  On the advice of my attorney, I'm
 12  not answering the question.

18.    Page 159, Line 9 to Page 160, Line 23?

    9    So here's my question.  Did you believe that in
10  this e-mail that's on our screen at the bottom of
11  Exhibit 112 that it was important to accurately convey
12  Mr. Rapp's allegations as he told them to you, to
13  Mr. Fowler's team?
14    MR. JASSY:  Asked and answered I think for the
15  fifth time.  And to the extent it calls for the
16  disclosure of unpublished information, I -- or is asking
17  for -- or hinting at that there is unpublished
18  information that you're trying to get at, also lacks
19  foundation.
20    I instruct the witness not to answer on the
21  basis of the reporter's privilege and the reporter's
22  shield.  Otherwise, he can answer the question.
23    THE WITNESS:  On advice of my attorney, I'm not
24  answering that question.
25  ///
00160
 1  BY MR. SCOLNICK:
 2    Q.  Okay.  So let's look at the text of the e-mail.
 3    Is it big enough for you to see?
 4    A.  Yes.
 5    Q.  Okay.  You said, starting the second sentence,
 6  "The facts in this story are based on primary accounts
 7  from Anthony Rapp, but we wanted to take this step to
 8  ensure that there is no confusion about what we plan to
 9  publish to give you a fair opportunity to correct any
10  perceived errors or otherwise respond to our reporting."
11    Did I read that correctly?
12    A.  Yes.
13    Q.  This was the same day that this article would
14  be published; right?
15    A.  According to the time stamp, yes, it was.
16    Q.  And it was also several weeks after Mr. Rapp
17  first approached you with his allegations; right?
18    A.  Three weeks later, yes.
19    Q.  It was after you had the opportunity to prepare
20  a first draft; right?
21    A.  Yes.
22    Q.  Is that a yes?
23    A.  Yes.  Correct.

19.     Page 164, Lines 6 to 16

6     Q. Why didn't you reach out earlier to
7   Mr. Fowler's team to ask for a response? What I mean by
8   "earlier" is before October 28th.
9      MR. JASSY: Objection. Lacks foundation. And
10   to the extent it calls for the disclosure of unpublished
11   information, object based on the reporter's privilege
12   and reporter's shield.
13      Instruct the witness not to answer. Otherwise,
14   he may do so.
15      THE WITNESS: On the advice of my counsel, I'm
16   not responding to that question.

20.     Page 166, Lines 13 to 25

13     Q. Was it your choice to contact Mr. Fowler's team
14   and include the details of Mr. Rapp's allegations for
15   the first time on the day the article was to be
16   published?
17      MR. JASSY: Objection. Lacks foundation.
18   Misstates prior testimony. And to the extent it calls
19   for the disclosure of unpublished information, I object
20   on the basis of the reporter's shield and the reporter's
21   privilege.
22      Instruct the witness not to answer. Otherwise,
23   he may do so.
24      THE WITNESS: On the advice of my attorney, I'm
25   not answering that question.

21.     Page 167, Lines 2 to 20

2     Q. Last sentence of Point 1 you said, "Rapp
3   alleges that, the best of his recollection, he has never
4   heard from nor spoken with Spacey since that night
5   besides seeing him on the set of the film of 'Six
6   Degrees of Separation' and seeing him again before the
7   1999 Tony Awards."
8      Did I read that correctly?
9    A. You did.
10     Q. Isn't it true that Mr. Rapp told you that he
11   last saw Mr. Fowler at the two thousand -- at the 2008

19

12  awards ceremony?
13      MR. JASSY:  Object on the basis -- or I object
14  to the extent that it calls for disclosure of
15  unpublished information based on the reporter's
16  privilege and the reporter's shield.
17      But to the extent that Mr. Vary believes he can
18  testify on it, he may.
19      THE WITNESS:  On the advice of my attorney, I
20  am not going to answer that question.

22.     Page 167, Line 22 to Page 168, Line 8

22      Q.  Were you concerned in this e-mail, when you
23  wrote it to Mr. Fowler's team, that you were not
24  accurately conveying what Mr. Rapp had told you?
25      MR. JASSY:  Objection.  Misstates prior
00168
1  testimony.  Lacks foundation.  And to the extent it
2  calls for the disclosure of unpublished information, I
3  object on the basis of the reporter's shield and
4  reporter's privilege.
5      Instruct the witness not to answer.  Otherwise,
6  he may.
7      THE WITNESS:  On the advice of my attorney, I'm
8  not answering that question.

23.     Page 170, Lines 2 to 10

2      Q.  Did you refer to your correspondence to
3  Mr. Fowler's team as a no-surprise e-mail?
4      MR. JASSY:  Objection to the extent it calls
5  for the disclosure of unpublished information.
6      I instruct the witness not to answer on the
7  grounds of the reporter's privilege send the reporter's
8  shield.  Otherwise, he may do so.
9      THE WITNESS:  On the advice of my attorney, I
10  am not responding to that question.

24.     Page 171, Line 20 to Page 172, Line 5

20      Q.  If a no-surprise e-mail is, as you said, good

20

21  journalism, then why did you not send a no-surprise
22  e-mail before October 29, 2017?
23      MR. JASSY:  Objection.  Lacks foundation.
24      To the extent that it calls for disclosure of
25  unpublished information based on the reporter's shield
00172
 1  and the reporter's privilege, I instruct the witness not
 2  to answer.  Otherwise, he may answer the question.
 3      MR. SAGHIR:  Join.
 4      THE WITNESS:  On advice of my attorney, I'm not
 5  answering that question.

25.    Page 173, Line 24 to Page 174, Line 18

24      Q.  Mr. Vary, you learned the identity of
25  Mr. Rapp's friend from Joliet before this article
00174
 1  published; right?
 2      MR. JASSY:  To the extent it calls for the
 3  disclosure of unpublished information, instruct the
 4  witness not to answer based on the reporter's privilege
 5  and the reporter's shield.  Otherwise, he may do so.
 6      THE WITNESS:  On the advice of my attorney, I'm
 7  not answering that question.
 8  BY MR. SCOLNICK:
 9      Q.  Mr. Rapp told you before you published this
10  article that his friend from Joliet was a man named John
11  Barrowman; right?
12      MR. JASSY:  Objection.
13      To the extent it calls for the disclosure of
14  unpublished information, instruct the witness not to
15  answer on the grounds of the reporter's privilege and
16  the reporter's shield.  Otherwise, he may do so.
17      THE WITNESS:  On the advice of my attorney, I
18  am declining to answer that question.

26.    Page 177, Line 7 to Page 178, Line 21

 7      Q.  Have you ever tried Googling Mr. Barrowman to
 8  determine his birthday?
 9      MR. JASSY:  Objection.
10      To the extent it calls for the disclosure of

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

11  unpublished information protected from disclosure by
12  the -- and news-gathering information protected from
13  disclosure by the reporter's shield and reporter's
14  privilege, I instruct the witness not to answer.
15  Otherwise, he may do so.
16      THE WITNESS:  I -- on the advice of my
17  attorney, I decline to answer.
18  BY MR. SCOLNICK:
19    Q.  Mr. Rapp, if you knew that John Barrowman was
20  actually a 19-year-old man in 1986, would you have
21  included these details claiming that he was a
22  17-year-old boy in your story?
23      MR. JASSY:  Objection.  Lacks foundation.
24  Misstates prior testimony.  Best Evidence Rule.
25      To the extent it calls for -- and
00178
1  argumentative.
2      To the extent it calls for disclosure of
3  unpublished information, instruct the witness not to
4  answer on the basis of reporter's privilege and the
5  reporter's shield.  Otherwise, he may do so.
6      THE WITNESS:  On the advice of my attorney, I
7  decline to answer.
8  BY MR. SCOLNICK:
9    Q.  Do you think it's important -- how about this.
10  Did you think in 2017 that it was important that you get
11  the age of Mr. Rapp's friend, as you referred to in the
12  story, correct before going to print?
13      MR. JASSY:  Objection.
14      To the extent it calls for the disclosure of
15  unpublished information protected from the disclosure by
16  the reporter's shield and reporter's privilege, instruct
17  the witness not to answer.  Otherwise, he may do so.
18      And I'll also object that it lacks foundation
19  and it's argumentative.
20      THE WITNESS:  On the advice of my attorney, I
21  decline to answer.

27.    Page 179, Lines 13 to 20

13    Q.  Okay.  So, Mr. Vary, if you knew that John
14  Barrowman was actually 19 -- a 19-year-old man in 1986,
15  would you have included the details in your story that

22

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

16  he was only a 17-year-old boy?
17      MR. JASSY:  Same objections and same
18  instructions as the last question.
19      THE WITNESS:  On advice of my attorney, I am
20  declining to answer that question.


28.    <u>Page 180, Line 8 to Page 181, Line 16</u>

8    Q.  Has anyone told you, after publishing this
9   article, that Mr. Barrowman was actually 19 years old in
10  1986?
11      MR. JASSY:  Objection.
12      To the extent it calls for disclosure of
13  unpublished information, instruct the witness not to
14  answer on the grounds of reporter's privilege and the
15  reporter's shield.  Otherwise, he may do so.
16      THE WITNESS:  On the advice of my attorney, I
17  am declining to answer that question.
18      MR. JASSY:  I assume you mean other than you,
19  Chase, in your representations in this deposition;
20  right?
21      MR. SCOLNICK:  Thank you.  Yes.
22  BY MR. SCOLNICK:
23    Q.  Other than me today, has anyone told you, after
24  publishing this article -- or at any time that
25  Mr. Barrowman was actually a 19-year-old man in 1986?
00181
1       MR. JASSY:  Same objection.  Same instruction.
2       THE WITNESS:  On the advice of my attorney, I'm
3   declining to answer that question.
4   BY MR. SCOLNICK:
5     Q.  If you would have known at the time of
6   publishing this article that Mr. Barrowman was a
7   19-year-old man and not a 17-year-old boy, would you
8   still have published the details as you did and included
9   in the story?
10      MR. JASSY:  Objection.  Calls for speculation.
11  Lacks foundation.
12      To the extent that it calls for the disclosure
13  of unpublished information, instruct the witness not to
14  answer.  Otherwise, he may do so.
15      THE WITNESS:  Advice of my attorney, I'm
16  declining to answer this question.

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

29.    Page 182, Line 14 to Page 184, Line 1

14    Q.  In the approximately three weeks between
15    Mr. Rapp first telling you his story and you publishing
16    it, what, if any, attempts did you make to reach out to
17    Mr. Barrowman and ask him to corroborate or contradict
18    Mr. Rapp's account?
19        MR. JASSY:  Objection.
20        To the extent it calls for the disclosure of
21    unpublished information, instruct the witness not to
22    answer on the basis of the reporter's privilege and the
23    reporter's shield.  Otherwise, he may answer.
24        THE WITNESS:  The advice of my attorney, I'm
25    declining to answer that question.
00183
1    BY MR. SCOLNICK:
2    Q.  Did you think Mr. Fowler deserved, before you
3    publishing this story, in that three-week period of
4    time, that you go out and attempt to verify what
5    Mr. Rapp was telling you by contacting a percipient
6    witness from 1986?
7        MR. JASSY:  Objection.  Lacks foundation.
8    Argumentative.
9        To the extent it calls for the disclosure of
10    unpublished information, instruct the witness not to
11    answer on the grounds of the reporter's privilege and
12    the reporter's shield.  Otherwise, he may answer.
13        THE WITNESS:  On the advice of my attorney, I
14    am declining to answer that question.
15    BY MR. SCOLNICK:
16    Q.  What, if any, attempts did you make to
17    interview Mr. Barrowman before you published this story
18    with Mr. Rapp's allegations?
19        MR. JASSY:  Objection.  Asked and answered.  To
20    the extent it calls for disclosure of unpublished
21    information protected from disclosure by the attorney --
22    excuse me -- by the reporter's shield or the reporter's
23    privilege, I instruct the witness not to answer.
24    Otherwise, he may answer.
25        THE WITNESS:  On the advice of my attorney, I'm
00184
1    declining to answer that question.

24
JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1   30.    Page 184, Line 17 to Page 185, Line 13

2          17      Has anyone informed you that Mr. Barrowman has
3          18   been deposed in this case?
           19      MR. JASSY:  Objection.
4          20      To the extent it calls for disclosure of
5          21   attorney-client privileged communications, I instruct
           22   the witness not to answer.
6          23      THE WITNESS:  On the advice of my attorney, I'm
7          24   not responding to that question.
           25   ///
8          00185
9          1   BY MR. SCOLNICK:
           2      Q.  Has anyone informed you that Mr. Barrowman
10         3   denies sitting in a VIP area with Mr. Rapp and
           4   Mr. Fowler at the Limelight in 1986?
11         5      MR. JASSY:  Objection.
12         6      To the extent it calls for the disclosure of
           7   attorney-client privileged communications or unpublished
13         8   information obtained in the course of news-gathering,
           9   instruct the witness not to answer on the grounds of the
14         10   reporter's privilege and the reporter's shield.
15         11   Otherwise, he can answer.
           12      THE WITNESS:  On the advice of my attorney, I'm
16         13   declining to answer that question.
17

18  31.    Page 188, Lines 7 to 16
19
           7      Q.  Did Mr. Rapp tell you that he had been to
20         8   Mr. Fowler's apartment more than once?
21         9      MR. JASSY:  Objection.
           10      To the extent it calls for disclosure of
22         11   unpublished information, I object based on the
23         12   attorney -- excuse me -- the -- the reporter's privilege
           13   and the reporter's shield and instruct with the witness
24         14   not to answer.  Otherwise, he may.
25         15      THE WITNESS:  On the advice of my attorney, I'm
           16   not responding to that question.
26

27  32.    Page 188, Line 25 to Page 189, Line 9
28
           25      Q.  Did Mr. Rapp tell you that he and John

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

00189
1  Barrowman and Mr. Fowler went back to Mr. Fowler's
2  studio apartment after the Limelight?
3      MR. JASSY:  Objection.
4      To the extent it calls for the disclosure of
5  unpublished information, instruct the witness not to
6  answer based on the reporter's privilege and the
7  reporter's shield.  And otherwise, he may do so.
8      THE WITNESS:  On the advice of my attorney, I'm
9  not responding to that question.

33.    Page 199, Line 20 to Page 200, Line 7

20     Q.  What about getting a floor plan of the
21  apartment?  Is that something you're able to do in -- in
22  2017, when you were told by Mr. Rapp that Mr. Fowler's
23  apartment had a bedroom?
24     MR. JASSY:  Objection.  Calls for speculation.
25  Lacks foundation.  And to the extent that it calls for
00200
1  the disclosure of -- of unpublished information or
2  news-gathering information, object on the reporter's
3  privilege and the reporter's shield.
4      Instruct the witness not to answer.  But he
5  may, if he's able to.
6      THE WITNESS:  On the advice of my attorney, I
7  am declining to respond to that question.

34.    Page 200, Line 22 to Page 201, Line 10

22     Q.  I think to clarify that last question, let me
23  ask it again.
24     If you would have known in October of 2017 that
25  Mr. Fowler's apartment in 1986 did not -- did not have a
00201
1  bedroom, would you have still published this story?
2      MR. JASSY:  Objection.  Calls for speculation.
3  Incomplete hypothetical.  Lacks foundation.  And to the
4  extent that it calls for disclosure of unpublished
5  information, I object on the basis of a reporter's
6  privilege and the reporter's shield.
7      Instruct the witness not to answer.  Otherwise,

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8  he may answer the question.
9       THE WITNESS:  On the advice of my attorney, I'm
10  declining to respond to that question.

35.    Page 202, Lines 11 to 20

11     Q.  Did Mr. Rapp identify any witnesses who could
12  put him at this alleged party at Mr. Fowler's apartment?
13       MR. JASSY:  Objection.
14       To the extent it calls for the disclosure of
15  unpublished information, I object on the basis of the
16  reporter's privilege and the reporter's shield and
17  instruct the witness not to answer.  But you may
18  otherwise answer the question.
19       THE WITNESS:  On the advice of my attorney, I'm
20  not responding to that question.

36.    Page 203, Lines 9 to 19

9     Q.  Did Mr. Rapp provide the description of any
10  witness who allegedly saw him at a party at Mr. Fowler's
11  apartment?
12       MR. JASSY:  Objection.  To the extent it calls
13  for the disclosure of unpublished information, object
14  based on the reporter's privilege and the reporter's
15  shield.
16       Instruct the witness not to answer.  Otherwise,
17  he may answer the question.
18       THE WITNESS:  On the advice of my attorney, I'm
19  not responding to that question.

37.    Page 204, Line 22 to Page 205, Line 6

22     Q.  And what details did she provide about
23  Mr. Rapp's account that he allegedly told her in 1992?
24       MR. JASSY:  Objection.
25       To the extent it calls for the disclosure of
00205
1  unpublished information, I instruct the witness not to
2  answer on the basis of the reporter's privilege and the
3  reporter's shield.  Otherwise, he may answer the

1
2
3

    4  question.
    5      THE WITNESS:  On advice of my attorney, I'm not
    6  responding to that question.

4

38.     <u>Page 205, Line 19 to Page 206, Line 19</u>

5
6
7
8
9
10

    19    Q.  Did you interview any witnesses who saw
    20  Mr. Rapp interact with Mr. Fowler in 1986?
    21      MR. JASSY:  Objection.
    22      To the extent it calls for the disclosure of
    23  unpublished information, instruct the witness not to
    24  answer on the basis for the reporter's privilege and the
    25  reporter's shield.  Otherwise, he may answer the
00206

11
12
13
14
15
16
17
18
19
20
21
22
23

    1  question.
    2      THE WITNESS:  On the advice of my attorney, I'm
    3  declining to respond to that question.
    4  BY MR. SCOLNICK:
    5    Q.  Did you interview anyone who -- to whom
    6  Mr. Rapp told his allegations at around the time of --
    7  well, in the -- in 1986 or 1987 -- strike that.  I can
    8  ask the question a little bit cleaner.
    9      Did you interview anyone who confirmed to you
    10  that Mr. Rapp shared with them his allegations against
    11  Mr. Fowler at or around the time that the allegations
    12  allegedly occurred?
    13      MR. JASSY:  Objection.  Vague.
    14      To the extent that it calls for the disclosure
    15  of information protected by the reporter's shield and
    16  the reporter's privilege, I instruct the witness not to
    17  answer.  Otherwise, he may do so.
    18      THE WITNESS:  On the advice of my attorney, I'm
    19  declining to respond to that question.

24
25
26
27
28

39.     <u>Page 207, Line 20 to Page 208, Line 4</u>

    20    Q.  Did Mr. Rapp tell you what details Anthony
    21  provided at this party?
    22      MR. JASSY:  Objection.
    23      To the extent it calls for the disclosure of
    24  unpublished information, instruct the witness not to
    25  answer on the basis of the reporter's privilege and the

1

00208
1   reporter's shield.  Otherwise, he may answer the
2   question.
3       THE WITNESS:  On the advice of my attorney, I'm
4   declining to respond to that question.

40.    Page 209, Lines 11 to 21

11   Q.  Well, Mr. Rapp's telling you here in writing
12   that it was John Barrowman that went to the Limelight
13   with Mr. Fowler and Mr. Rapp; right?
14       MR. JASSY:  Objection.
15       To the extent that it's asking for the
16   disclosure of unpublished information protected from
17   disclosure by the reporter's shield and reporter's
18   privilege, instruct the witness not to answer.
19   Otherwise, he can answer the question.
20       THE WITNESS:  On the advice of my attorney, I'm
21   not responding to that question.

41.    Page 210, Lines 11 to 21

11   Q.  Mr. Vary, did Mr. Rapp ever tell you that you
12   shouldn't share the details of what he told you about
13   his interactions with Mr. Fowler and Mr. Barrowman?
14       MR. JASSY:  Objection.  Lacks foundation.  And
15   to the extent it calls for the disclosure of unpublished
16   information, object on the basis of the reporter's
17   shield and the reporter's privilege.
18       Instruct the witness not to answer, unless he's
19   otherwise able to do so.
20       THE WITNESS:  On the advice of my attorney, I
21   am declining to respond to that question.

42.    Page 213, Lines 4 to 14

4   Q.  At no point did Mr. Rapp tell you he had
5   trouble remembering the details of his allegations, did
6   he?
7       MR. JASSY:  Objection.  Lacks foundation.
8       And to the extent it's asking for unpublished

29

9  information -- I'm not sure that it is; but if it is, I
10  instruct the witness not to answer on the basis of the
11  reporter's shield and reporter's privilege.  But
12  otherwise, he can answer the question, if he's able.
13      THE WITNESS:  No.  On the advice of my
14  attorney, I am declining to respond to that question.

43.    Page 213, Line 16 to Page 215, Line 2

16      Q.  Looking at the top of Page 46.  I asked you
17  earlier about Mr. Rapp's statement, "He didn't tell the
18  rest of the story, though."  When I asked you what you
19  meant by that, you said the rest of the story that
20  appears in the article.  So I'm trying to figure out
21  here what you believe Mr. Barrowman knew about the rest
22  of -- I'm sorry.  Strike that.
23      I'm trying to figure out what you believe
24  Mr. Barrowman knew beyond what appears in the -- in the
25  -- in the prior sentence, which is that Mr. Barrowman
00214
1  went to the Limelight with Mr. Rapp and Mr. Fowler.
2      What beyond that was the rest of the story?
3      MR. JASSY:  Objection.  Compound.  And
4  misleading.  Misstates prior testimony.  Lacks
5  foundation.  And to the extent it calls for the
6  disclosure of unpublished information, I object on the
7  basis of the reporter's shield and reporter's privilege.
8      Instruct the witness not to answer.  Otherwise,
9  he may do so.
10      THE WITNESS:  On the advice of my attorney, I'm
11  declining to respond to that question.
12  BY MR. SCOLNICK:
13      Q.  Let me ask the question more cleanly.
14      What else did Mr. Rapp tell you about his
15  interactions with Mr. Barrowman and Mr. Fowler?
16      MR. JASSY:  Objection.  Lacks foundation.  And
17  to the extent that it calls for the disclosure of
18  unpublished information, which I think it does, the
19  objection is based on the reporter's shield, the
20  reporter's privilege.
21      And I instruct the witness not to answer,
22  unless he's otherwise able.
23      MR. SAGHIR:  Objection.  No foundation.

24       MR. JASSY:  Sorry.  I thought I said that one
25  too.  I join in that.
00215
1        THE WITNESS:  On the advice of my attorney, I'm
2  declining to respond to that question.


44.    Page 217, Line 11 to Page 221, Line 12

11    Q.  What are the details about the party that you
12  steered away from in your article?
13       MR. SAGHIR:  Objection.  Assumes facts not in
14  evidence.  Argumentative.  No foundation.
15       MR. JASSY:  Join in all those objections.
16       And to the extent that it calls for the
17  disclosure of unpublished information, instruct the
18  witness not to answer on the basis of the reporter's
19  shield and the reporter's privilege.  And -- otherwise,
20  he's free to answer the question.
21       THE WITNESS:  On the basis on the advice of my
22  attorney, I'm -- I'm electing not to respond to that
23  question.  I will, I believe, refer to earlier testimony
24  I gave in which I indicated that Anthony's best
25  recollection -- you know, what -- what -- what Anthony
00218
1  told me about the party is what is published.
2  BY MR. SCOLNICK:
3    Q.  Are you willing to tell me any details about
4  what Mr. Rapp told you about his version of events
5  outside of what you published in your -- in your
6  story -- in your article?
7       MR. SAGHIR:  Objection.  No foundation.
8       MR. JASSY:  Join in that objection.
9       THE WITNESS:  I would just reiterate the
10  objections that my attorney's been making as far as the
11  reporter's shield law.  I am here to talk about what was
12  published in the story.
13  BY MR. SCOLNICK:
14    Q.  So is that -- I just want to make sure the
15  record's clear.  Are you refusing to answer based on
16  your attorney's objection for the reporter's shield law
17  statements that Mr. Rapp has made to you that were
18  unpublished?
19       MR. SAGHIR:  Objection.  Lacks foundation.

31

20        MR. JASSY:  It lacks foundation.  And I think I
21  know what you're getting at -- but the -- I'm still
22  going to raise the objection that it call -- to the
23  extent that it calls for the disclosure of unpublished
24  information, I would instruct the witness not to answer
25  on the basis of the shield and the privilege --
00219
 1  reporter's shield and reporter's privilege.  Otherwise,
 2  he can answer the question.
 3        THE WITNESS:  I am following the best advice of
 4  my attorney to decline to respond to questions about
 5  unpublished material.
 6  BY MR. SCOLNICK:
 7     Q.  Okay.  Did you make an audio recording of any
 8  of your interviews with Mr. Rapp?
 9        MR. JASSY:  Objection.
10        To the extent that it calls for the disclosure
11  of news-gathering techniques protected from disclosure
12  by the reporter's privilege and the reporter's shield, I
13  instruct the witness not to answer on the grounds -- the
14  reporter's privilege and reporter's shield.  Otherwise,
15  if he can answer the question, he may.
16        THE WITNESS:  In the best advice of my
17  attorney, I'm declining to respond to that question.
18  BY MR. SCOLNICK:
19     Q.  Did you take notes during any of your
20  interviews with Mr. Rapp?
21        MR. JASSY:  Objection.
22        To the extent that it calls for the disclosure
23  of news-gathering information that's unpublished, which
24  it does, instruct the witness not to answer on the basis
25  of the reporter's shield and reporter's privilege.
00220
 1  Otherwise, he can answer the question.
 2        THE WITNESS:  The advice of my attorney, I'm
 3  declining to respond to that question.
 4  BY MR. SCOLNICK:
 5     Q.  Did Mr. Rapp tell you how many people were at
 6  the party -- the alleged party at Mr. Fowler's house?
 7        MR. JASSY:  Objection.
 8        To the extent calls for the disclosure
 9  unpublished information, instruct the witness not to
10  answer on the basis of the reporter's shield and the
11  reporter's privilege.  Otherwise, he can answer the

32

12  question.
13      THE WITNESS:  On the advice of my attorney, I'm
14  declining to respond to that question.
15  BY MR. SCOLNICK:
16      Q.  Did Mr. Rapp refer to the event that allegedly
17  occurred at Mr. Fowler's house as a gathering or a party
18  or some other word?
19      MR. JASSY:  Objection.
20      To the extent it calls for disclosure of
21  unpublished information, I instruct the witness not to
22  answer on the grounds of the reporter's privilege and
23  the reporter's shield.  Otherwise, he can answer the
24  question.
25      THE WITNESS:  On the advice of my attorney, I'm
00221
1  declining to respond to that question.
2  BY MR. SCOLNICK:
3      Q.  Did Mr. Rapp tell you whether Mr. Fowler had a
4  dog at his apartment?
5      MR. JASSY:  Objection.  Calls for the
6  disclosure -- to the extent that it calls for the
7  disclosure of unpublished information, instruct the
8  witness not to answer on the basis of the reporter's
9  shield and the reporter's privilege.  Otherwise, he can
10  answer the question.
11      THE WITNESS:  On the advice of my attorney, I'm
12  declining to respond to that question.


45.    Page 228, Line 24 to Page 229, Line 13


24      Q.  Did you speak with Mr. Dawes, or did someone
25  else on your team?
00229
1      MR. JASSY:  To the extent it calls for the
2  disclosure of news-gathering information that's not
3  published, instruct the witness not to answer on the
4  grounds of the reporter's shield and the reporter's
5  privilege.  Otherwise, he can answer the question.
6      THE WITNESS:  This is not a section of the
7  article that I authored.
8  BY MR. SCOLNICK:
9      Q.  To your recollection, have you ever
10  communicated with Mr. Dawes?

11    MR. JASSY:  Objection.  Same instruction.
12        THE WITNESS:  On the advice of my attorney, I'm
13  not responding to that question.

46.    Page 230, Line 17 to Page 231, Line 1

17    Q.  What, if any, investigation did you conduct
18  regarding Mr. Dawes's allegations against Mr. Fowler?
19        MR. JASSY:  Objection.  Asked and answered.
20        And to the extent that it calls for the
21  disclosure of information protected from disclosure by
22  the reporter's shield and the reporter's privilege,
23  instruct the witness not to answer.  But otherwise, he
24  may.
25        THE WITNESS:  On the advice of my attorney, I'm
00231
 1  declining to respond to that question.

47.    Page 275, Line 14 to Page 276, Line 17

14    Q.  Why did you not inform your readers that you
15  informed Mr. Fowler's camp for the first time of the
16  nature of the allegations and identity of the accuser
17  just hours before the article was published?
18        MR. JASSY:  Objection.  Lacks foundation.
19        And to the extent it calls for the disclosure
20  of news-gathering information or unpublished information
21  that is protected from disclosure by the reporter's
22  privilege or the reporter's shield, I instruct the
23  witness not to answer.  But otherwise, he can do so, if
24  he's able.
25        THE WITNESS:  On the advice of my attorney, I
00276
 1  am not responding to that question.
 2  BY MR. SCOLNICK:
 3    Q.  Did you think it was important for the public
 4  to know that you reached out to Mr. Fowler's camp and
 5  informed them of the allegations and the identity of the
 6  accuser hours before the story was published?
 7        MR. JASSY:  Objection.
 8        To the extent that it calls for the disclosure
 9  of information that is protected from disclosure by the

34

10 reporter's privilege, Reporter's shield, instruct the
11 witness not to answer. Otherwise, he can do so.
12     And I also object that it lacks foundation.
13     MR. SAGHIR: Join in the objection as to no
14 foundation.
15     THE WITNESS: Based on my best -- based on
16 advice of my attorney, I am declining to respond to that
17 question.

**B.    Moving Party Mr. Fowler's Statement**

Mr. Vary's counsel's deposition objections and instructions not to answer were made on two primary grounds. First, Mr. Vary objected that the subject of the questions was protected under a qualified "reporter's privilege" under the First Amendment. Second, Mr. Vary objected that California's "reporter's shield" provided protection that justified his refusal to provide this discovery. These objections have no merit.

The Court can and should find Mr. Vary to be in contempt and issue appropriate sanctions unless Mr. Vary provides a complete production of documents and sits for a supplemental deposition within five (5) business days of the Court's order on this motion to answer the questions he refused to answer at the first session of his deposition plus all reasonable follow-up questions. *See, e.g.*, Fed. R. Civ. P. 45(g) (stating district court "where compliance is required . . . .may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena or an order related to it").

**1.    Mr. Vary's Objections Based On Qualified Protection Under the First Amendment Are Without Merit**

Mr. Vary first argues the First Amendment provides qualified protection for his "newsgathering activities." He relies on the Ninth Circuit's opinion in *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) for his broad assertion that First Amendment justifies his blanket objection under these circumstances.

As an initial matter, Mr. Vary has failed to demonstrate the questions he refused to answer concern his protected newsgathering. While Mr. Vary wrote an article on Rapp's allegations against Mr. Fowler in October 2017 and a follow-up article a year

1    later in 2018, Mr. Vary has known Rapp for over two decades.  Mr. Vary acknowledges

2    he and Rapp are friends and remain friends.  *See* Scolnick Decl., Ex. 1 (Vary Depo. RT

3    at 58:21-25, 60:17-18, 66:3-7).  Mr. Vary cannot use a qualified privilege under the First

4    Amendment to broadly protect all of his communications with Rapp other than what he

5    explicitly included in his two articles.

6        Further, the First Amendment protection – even when broadly interpreted –applies

7    to a reporter's "source materials."  *Schoen,* 5 F.3d at 1295.  Here, Mr. Vary refused to

8    answer many questions at deposition about his own thought processes and actions in

9    preparing articles about Rapp's allegations against Mr. Fowler.  *See, e.g., Dillon v. City*

10   *and County of San Francisco*, 748 F.Supp. 722, 726 (N. D. Cal. 1990) (finding non-party

11   could be compelled to testify about personal observations).  Such information is relevant

12   and important because Rapp likely will attempt to present evidence at trial about the

13   Buzzfeed article that contains the allegations upon which his claims are based.  Rapp

14   likely will attempt to claim the account contained in the Buzzfeed article is consistent

15   with that given at his deposition and at trial.  But the evidence suggests Rapp made

16   various statements to Mr. Vary inconsistent with the version of events about which he

17   testified at deposition.

18       Throughout discovery, Rapp also has mischaracterized Mr. Fowler's response to

19   Mr. Vary's request for comment on his Buzzfeed article.  Mr. Vary's text exchanges with

20   Rapp demonstrate Mr. Vary concealed material inconsistencies in Rapp's account and

21   misrepresented material facts when seeking Mr. Fowler's comment.  By his own

22   admission in text exchanges with Rapp, Mr. Vary changed Rapp's account to deprive

23   Mr. Fowler of a fair and adequate opportunity to respond to the demonstrably false details

24   of Rapp's account.  Evidence of Mr. Vary's attempt to deceive Mr. Fowler and deprive

25   him of an opportunity to comment on the story—all in concert with Rapp—is essential

26   to Mr. Fowler's defense and beyond the scope of legitimate journalistic activity protected

27   by the First Amendment.

28

Further, Mr. Vary has not and cannot show he did not affirmatively waive the protection he now asserts. Importantly, some of the unpublished communications between Mr. Vary and Rapp – or at least some of their text message communicated – previously were produced in this case by Rapp, with Mr. Vary's knowledge and implicit consent. More specifically, Mr. Vary testified he was informed by Rapp's lawyers in early 2021 that Rapp intended to produce various text messages between Rapp and Mr. Vary, including back-and-forth between them leading to the finalization and publication of Mr. Vary's Buzzfeed article. *See* Scolnick Decl., Ex. 1 (Vary Depo. Tr.) at 12:19-13:7, 14:24-15:4, 28:16-23.) Mr. Vary was told those communications would be produced, and he interjected no objection at that time. To the extent he had any valid objection, he waived it by not taking action at that time, knowing that unpublished materials would be disclosed. *See, e.g., United States v. Bahe*, 128 F.3d 1440, 1442 (10th Cir. 1997). But, at his deposition, Mr. Vary refused to answer any question about his unpublished communications with Rapp.

The produced text messages suggested there were glaring inconsistencies with the story Rapp initially told Mr. Vary with what ultimately was published in the Buzzfeed article. For example, Rapp stated in the text message he last saw Mr. Fowler in 2008 at the Tony Awards, but that was proven to be impossible. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo RT) at 119:15-122:7. But this inconsistency was corrected in Mr. Vary's published story with no acknowledgement or disclosure in the article that Rapp had stated it incorrectly. *Id*. at 167:2-20. Likewise, the text messages produced by Rapp show he disclosed his visiting friend during the time of the alleged incident was an actor named John Barrowman. Although Barrowman's age is easily verifiable and reveals he was 19 years old at the time of the alleged incident, Mr. Vary's story makes the demonstrably false claim that Rapp's unnamed friend was a "17 year-old boy" in 1986. But Mr. Vary refused to answer questions about this. *Id*. at 174:9-18, 177:7-181:16.

Besides lacking justification to withhold even the "source materials" contemplated by the protection, the jury also must be permitted to understand the circumstances of how

1    it was prepared and published – *e.g.*, the extent of Mr. Vary's investigation, the degree

2    to which the article's content adequately conveyed his understanding, and his personal

3    biases. Without that context, the jury will be misled and confused about the veracity of

4    the Buzzfeed article's assertions and could mistakenly believe it was thoroughly

5    investigated or prepared in good faith.

6         Even if the First Amendment could be properly invoked and has not been waived,

7    the protection is qualified, not absolute. The First Amendment protection must be set

8    aside, and discovery must be allowed, where the requested material is "(1) unavailable

9    despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3)

10   clearly relevant to an important issue in the case." *See Mark v. Shoen*, 48 F.3d 412, 416

11   (9th Cir. 1995).

12        These factors are present here. Mr. Fowler already deposed Rapp, including about

13   his conversations with Mr. Vary. Rapp claimed he withheld no details he had with Mr.

14   Vary but Rapp could not recall specifics of each discussion he had with Vary. *See, e.g.*,

15   Scolnick Decl., Ex. 8 (Rapp Depo. RT at 9:5-10:7, 260:18-263:22, 269:13-270:7). Nor

16   did Rapp provide any specific details in his following interrogatory responses. *Id.*, Ex.

17   9 (Excerpts from Rapp's 8/9/21 Interrogatory Responses). More specifically, Rapp

18   stated he did "not recall the exact words [he] used" in discussing his allegations with Mr.

19   Vary. *Id.* He stated he provided "additional details of the abuse" but was "unable to

20   state with certainty what more details [he] provided." *Id.* But text messages produced

21   by Rapp and other documents show that Rapp told Mr. Vary a series of inconsistent

22   details, including the alleged date of his last time seeing Mr. Fowler, his assertion that

23   the incident occurred in a nonexistent bedroom in Mr. Fowler's apartment, and the age

24   of Mr. Rapp's friend who had accompanied him at a club with Mr. Fowler a few days

25   before the alleged incident. The evidence of Rapp's statements to Mr. Vary in the weeks

26   before Rapp's claims first became public cannot be obtained elsewhere. Further, Mr.

27   Fowler clarified during the meet and confer conference that he is not seeking the

28   disclosure of information from confidential sources, but Rapp and the others identified

1    in Buzzfeed article) were not and are confidential sources.

2         The details of Rapp's discussions with Mr. Vary likewise are not cumulative and

3    are clearly relevant to an important issue.  Rapp's credibility will be a critical issue at

4    trial.  Rapp voluntarily sought out the *Buzzfeed* article with a friendly writer who would

5    sanitize the story by omitting inconsistent and demonstrably false details.  The *Buzzfeed*

6    article publicly disclosed Rapp's allegations for the first time, many decades after the

7    alleged incident.  The widespread publicity of that *Buzzfeed* article concealed Rapp's

8    false account.  Rapp's unpublished statements to Mr. Vary – rather the manicured and

9    incomplete end result – are critical to examining Rapp's credibility and the veracity of

10    his claims.

11

12        **2.**    **Mr. Vary's Objections Based on California's Reporter's Shield**
               **Law Do Not Justify His Withholding of Discovery, Nor Has He**

13               **Shown California's Shield Law Applies Here.**

14         Besides the purported protections of the First Amendment under these

15    circumstances, Mr. Vary also claims that California's "reporter's shield" law applies to

16    this discovery dispute and provides absolute protection justifying Mr. Vary's

17    withholding of documents and refusal to answer questions at deposition.  Vary wrongly

18    presumes California law applies to this discovery dispute.  Under Evidence Code section

19    501, "with respect to an element of a claim or defense as to which State law supplies the

20    rule of decision, the privilege of a witness . . . shall be determined in accordance with

21    State law."  Fed. R. Evid. 501.  As an initial matter, Under Federal Rule of Civil

22    Procedure 45(f), this Court can and should transfer this discovery dispute to the Southern

23    District of New York where this action is pending.  In this diversity action, New York

24    state law provides the substantive source of law for Rapp's claims.

25         But even if the Court heard this dispute, and applied California's choice of law

26    rules, the result should be application of New York state law.  Under California's

27    "governmental interest" choice of law analysis, the Court is to examine the policies

28    underlying the laws of the states involved to determine which state is more "interested"

1  in having its law applied.  Here, the lawsuit is pending in New York and will be decided

2  under New York law.  The primary source of Vary's *Buzzfeed* article was Rapp, who is

3  a New York citizen and appears to have been in New York at the time he spoke with

4  Vary about the substance for the Buzzfeed article.  While Mr. Vary is located in Los

5  Angeles, *Buzzfeed* – the media outlet which published the article and is likely the owner

6  of any unpublished materials– is based in New York City.  *See, e.g.,*

7  https://www.buzzfeed.com/about/contact.

8       New York's reporters' shield law was codified in New York Civil Rights Law §

9  79-h, and represents an important public policy for the state.  *See, e.g., In re Beach v.*

10  *Shanley*, 62 N.Y.2d 241, 255 (1984).  If any shield law applies, it should be that of New

11  York state.

12       New York's reporters' shield provides only qualified protection for non-

13  confidential sources and information. The test requires a court to weigh the competing

14  interests, similar to the First Amendment analysis above.  Under New York law, the

15  reporter's shield can be overcome where the party seeking disclosure shows the

16  information (1) is highly material and relevant, (2) is critical or necessary to the

17  maintenance of a party's claim, defense, or proof of an issue material thereto; and (3) is

18  not obtainable from any alternative source.  *See, e.g., O'Neill v. Oakgrove Const., Inc.*,

19  71 N.Y.2d  521, 527 (1988).  Each of these factors is present here.  Rapp's credibility

20  and the details of the alleged incident lie at the heart of this case.  Rapp's statements to

21  Mr. Vary provide critical evidence bearing on the veracity of Rapp's claim, and such

22  evidence cannot be obtained elsewhere.

23       Finally, even if the Court applied a choice of law analysis that determined

24  California law should apply, Mr. Vary still should have to provide the required

25  information.  Under California law, the state's reporter's shield law must be balanced

26  against a criminal defendant's constitutional right to a fair trial.  *See Delaney v. Superior*

27  *Court*, 50 Cal.3d 785, 805-806 (1990).  The California reporter's shield may be set aside

28  where the criminal defense shows there is a reasonable possibility the withheld

information would materially assist the defense.  *Id*. at 807-813.  While this is not a criminal case, similar considerations should apply because Rapp's claims are premised on his allegation that Mr. Fowler committed a crime.  Rapp's claims were asserted under New York's Child Victims Act which resuscitated certain civil claims but only where the conduct at issue would constitute a "sexual offense" as defined in section 130 of New York's Penal Law.  *See* N.Y. CLPR § 214-g.  Rapp should not be permitted to pursue civil claims against Mr. Fowler that rely on showing a criminal offense, while Mr. Fowler is shielded from critical evidence that could undermine those claims.

### 3.    <u>Vary's Other Objections Are Without Merit.</u>

During the meet and confer process, Mr. Vary also raised other miscellaneous objections, none of which have merit.  Mr. Vary claimed the deposition subpoena was deficient because it was issued under letterhead from this Court, rather than the Southern District of New York.  But Mr. Vary voluntarily appeared for deposition.  If he wished to stand on any perceived defect in the subpoena, he was required to bring a motion to quash under Federal Rule of Civil Procedure 45.  Mr. Vary did not move to quash or modify the subpoena and therefore waived these technical objections.  *See, e.g., BNSF Ry. Co. v. Alere, Inc*., 2018 U.S. Dist. LEXIS 83559, *13 (S.D. Cal. May 17, 2018) (failure to bring motion to quash waived objection based on geographic limit of subpoena).  He cannot appear for deposition but then refuse to answer questions based on an alleged defect in the subpoena that commanded his testimony.

Likewise, Mr. Vary's counsel's various objections on foundation are absurd, as his objections often were made to the very questions that sought to elicit foundational details.  Had Mr. Vary been allowed to answer, any missing foundation would have been supplied.

### C.    **Responding Party Vary's Statement:**

### 1.    <u>Fowler's Entire Motion Is Untimely.</u>

As shown by the caption page and the first paragraph of Fowler's introductory statement above, the discovery cut-off in this case was January 18, 2022 and the trial

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1  ready date is February 18, 2022.  Fowler brings this untimely motion to compel against

2  a third-party reporter after the close of discovery and mere days before the case is set to

3  go to trial.

4      "Untimeliness is sufficient ground, standing alone, to deny a discovery

5  motion." *Wyles v. Sussman*, 445 F. Supp. 3d 751, 755 (C.D. Cal. 2020) (quoting *Williams*

6  *v. Las Vegas Metro. Police Dep't*, 2015 WL 3489553, at *1 (D. Nev. June 3, 2015)).

7  Motions to compel filed after the close of discovery "are usually denied." *Id.* (citing

8  *Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*, 2017 WL 10339007, at *2 (C.D.

9  Cal. Aug. 9, 2017)).  As a general rule in this District, discovery motions must be brought

10  within "sufficient time for decision within the strictures of the District Judge's scheduling

11  order."  *See, e.g.*, Honorable Patricia Donahue,[3] *Judge's Procedures: 2. Discovery*

12  *Motions*,  https://www.cacd.uscourts.gov/honorable-patricia-donahue.    The  presiding

13  District Judge in the underlying litigation orders the parties to be "ready for trial" starting

14  on the date of the final pretrial filings, which are set for February 18, 2022.  *See Anthony*

15  *Rapp v. Kevin Spacey Fowler*, No. 20-cv-09586-LHK, Dkt. 118 (S.D.N.Y. Oct. 18, 2021)

16  (Scheduling Order).[4]  By noticing a hearing for *after* the dispositive motion deadline and

17  the final pretrial filing deadlines in the underlying litigation, Fowler risks interfering with

18  the merits phase of the case.  Fowler's present motion is untimely.

19      Fowler's lack of diligence is the source of delay here.  Adam Vary, the third-party

20  reporter, sat for an over seven-hour deposition on December 16, 2021 after being served

21  the second of two deposition subpoenas on December 6, 2021.  Jassy Decl. ¶¶ 4-5.

22  During the deposition, and in letters dated November 18, 2021 and December 14, 2021,

23  _____

24  [3] While this matter has not yet been assigned a magistrate judge at the time of the exchange of this Joint Stipulation, given the procedural posture under Rule 45, Judge

25  Patricia Donahue's procedures provide guidance on how this District addresses untimely motions.

26  [4] Per Judge Kaplan's scheduling order in the underlying civil litigation, the close

27  of discovery was extended from October 1, 2021 to January 18, 2021, and final pretrial filing deadlines are now set for February 18, 2022.  Fowler's papers sent to Vary's

28  counsel failed to include "a copy of the order establishing the initial case schedule, as well as any amendments," in violation of Local Rule 37-2.1.

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

Vary's counsel repeatedly advised Fowler's counsel that he would invoke the Reporter's Privilege/Shield in response to any questions about newsgathering and unpublished materials. Jassy Decl. ¶ 6. Fowler therefore had ample notice of Vary's positions and objections, yet he waited until weeks after the close of discovery to file this motion.

It is also noteworthy that Fowler waited until the final weeks of already-extended discovery deadlines to seek *any* discovery from Vary. If the discovery were as critical as Fowler now contends, he would have sought it before the first discovery cut-off in October 2021. *See* Scolnick Decl. ¶ 4 (first subpoena was issued to Vary on November 4, 2021). Now, noticing a hearing for this motion to compel for *after* summary judgment and final pretrial filing deadlines in the underlying litigation, Fowler undermines any argument that such discovery is relevant, let alone necessary to support his defenses. Courts disfavor the "bad faith gamesmanship" of raising eleventh hour discovery disputes. *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1141 (D. Nev. 2015).

## 2. <u>Fowler Did Not Comply with Local Rule 37-2.1.</u>

Local Rule 37-2.1 requires the parties to explain what they did to try to compromise on an issue or dispute. Fowler offered zero compromise on the deposition questions he now puts at issue. His only purported compromise was that he did not want to know the identities of any confidential sources, but that does not implicate any of the deposition questions at issue. Vary, on the other hand, did offer to compromise. Vary agreed to review his deposition transcript to determine what more he could provide that would not be protected from disclosure by the reporter's shield/privilege. Jassy Decl. ¶ 7. He also agreed to shorten the review period from 30 days to 20 days from the date he could access the transcript. *Id.* Fowler brings this motion before those 20 days have even expired. *Id.*

## 3. <u>Fowler's Motion Suffers Numerous Procedural Defects.</u>

Under the Federal Rules of Civil Procedure, Local Rules of the Central District of California, and individual procedures of several District Judges and Magistrate Judges of this District, Fowler's motion is defective on several other grounds. First, the

served notice of motion does not state before which judge, or in which courtroom, the motion will be heard and instead presumes a hearing date and time before seeking assignment to any judge in this District. Second, the Document Subpoena at issue was not properly served on Vary (counsel accepted service of the second records subpoena to Vary, but not the third Document Subpoena, which is the one at issue). Third, the Deposition Subpoena that Fowler seeks to enforce did not issue out of the court where the action is pending, in violation of FRCP 45(a)(2). Fourth, Fowler's counsel did not comply with L.R. 37-1 because counsel's letter did not: (a) identify "each" issue and/or discovery request in dispute, *see* Ex. 6; (b) specify the terms of the order sought—*e.g.*, no mention of seeking an order of contempt, *id.*; and (c) like this motion, Fowler provided almost no legal authority, and certainly nothing "dispositive." Scolnick Decl., Exs. 6 and 7 at 2. Fifth, Fowler did not comply with the court-mandated pre-motion discovery conference obligations specifically required by several judges in this District.

### 4.    <u>Vary Only Declined to Answer Questions That Related to His Role as a Journalist.</u>

Vary only opted not to answer deposition questions where the questions called for privileged information. It is true that Vary and Rapp were friends before any articles concerning Rapp and Fowler were published, but, contrary to Fowler's misrepresentations, Vary did *not* refuse to testify about his friendship with Rapp. Vary willingly answered questions about his connection to Rapp that were unrelated to Vary's role as a journalist. *See, e.g.,* Jassy Decl., Ex. 11 at 38:6-22, 58:17-63:14, 64:8-16, 66:3-67:21. Vary also responded to questions about the general practices of journalists. *See, e.g.,* Jassy Decl., Ex. 11 at 39:24-40:3, 72:1-75:17, 103:10-104:13, 108:5-109:19. However, if a question potentially called for the disclosure of unpublished information related to Vary's newsgathering and reporting on specific stories (e.g., about Fowler), counsel objected and instructed (nearly always) "to the extent" that it called for such information, but also instructed that Vary could otherwise answer the question. Sometimes Vary determined that he could answer the question in whole or in part, and

sometimes he determined that he could not. Very frequently, Vary answered the question at least in part because he understood the instruction to only apply to unpublished information. *See, e.g.,* Jassy Decl., Ex. 11 at 26:11-20, 27:1-9, 30:13-20, 31:11-32:1, 32:15-33:4, 47:6-18, 63:16-64:6, 64:20-65:6, 67:25-69:14, 116:20-117:9, 121:22-122:7, 126:2-12, 129:8-134:24, 146:15-147:3, 156:19-157:10, 158:14-159:1, 160:24-161:10, 168:10-23, 169:13-24, 170:18-171:18, 190:12-25, 193:3-194:8, 204:12-20, 208:17-209:2, 211:7-24, 212:13-213:2, 215:11-216:4, 222:16-223:4, 225:20-227:21, 228:24-229:7, 229:15-230:1, 242:20-243:11, 243:20-245:5. 249:9-250:13, 251:2-252:3.    A thoughtful line was drawn, and it is inaccurate for Fowler to suggest anything to the contrary.

### 5. <u>California Law Applies and Shields Vary from Further Deposition Testimony.</u>

#### a. **California Law Provides Reporters Like Vary with *Absolute* Protection in a Civil Case.**

In California, journalists are protected from having to disclose confidential sources and unpublished, non-confidential information as codified in the California Constitution, Art. 1, § 2(b) and California Evidence Code § 1070(a) (collectively, "California's Shield Law"). California's Shield Law protects journalists from having to "disclose *any* unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public." Cal. Const., art. I, § 2(b) (emphasis added); *O'Grady v. Super. Ct.*, 139 Cal. App. 4th 1423, 1459-60 (2006) (applying California's Shield Law to online journalists). Under California's Shield Law, "unpublished information," which is protected from disclosure in the face of a subpoena, includes ***any*** "information not disseminated to the public by the person from whom disclosure is sought, whether or not related information has been disseminated and includes, but is not limited to, all … data of whatever sort not itself disseminated to the public through a medium of communication, whether or not published information based upon or related to such material has been disseminated." *Id.*

California's Shield Law applies absolutely in civil cases, providing an "absolute immunity" from contempt in civil cases, and "'***absolute*** protection to nonparty journalists in civil litigation from being compelled to disclose unpublished information[.]'" *New York Times Co. v. Superior Court*, 51 Cal. 3d 453, 456-57, 461-462 (1990) (emphasis added; quoting decision from Court of Appeal, which the Supreme Court affirmed); *see also McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 119-120 (2007) ("the Shield Law confers an absolute immunity against compelled disclosure of the protected information and, although that immunity must occasionally yield when it threatens to frustrate the competing federal constitutional right of a criminal defendant to a fair trial, there is no analogous competing right of a civil litigant that will suffice to overcome the immunity").  "Since contempt is generally the only effective remedy against a non-party witness, the California [Shield Law] grant[s] such witnesses virtually absolute protection" in civil cases.  *Mitchell v. Superior Court*, 37 Cal. 3d 268, 274 (1984); *In re Willon*, 47 Cal. App. 4th 1080, 1091 (1996) (same).

Article 1, Section 2(b) of the California Constitution was enacted in 1980 by an overwhelming majority of California voters.  By elevating the protection from a statute – Evidence Code § 1070 – to the state constitution, the California electorate demonstrated their belief in the need to give journalists the maximum possible shield for information obtained in their newsgathering activities.  Recognizing this mandate, the Court of Appeal observed in *Playboy Enterprises, Inc. v. Superior Court*, 154 Cal. App. 3d 14, 27-28 (1984), that the interests of the press are favored over having civil actions determined on a full record:

> The elevation to constitutional status must be viewed as an intention to favor the interest of the press in confidentiality over the general and fundamental interest of the state in having civil actions determined upon a full development of material facts. . . . It has long been acknowledged that our state Constitution is the highest expression of the will of the people acting in their sovereign capacity as to matters of state law.

1    As the California Supreme Court explained in *Delaney v. Superior Court,* 50

2    Cal. 3d 785 (1990), the Shield Law applies to ***any*** unpublished information, ***even if it is***

3    ***not confidential***:

4              [Article 1, Section 2(b)] states plainly that a newsperson
              shall not be adjudged in contempt for 'refusing to disclose
5              any unpublished information'. . . . The use of the word 'any'
              makes clear that article I, section 2(b) applies to all
6              information, regardless of whether it was obtained in
              confidence.    Words used in a constitutional provision
7              'should be given the meaning they bear in ordinary use.' . . .
              In the context of article I, section 2(b), the word 'any' means
8              without limit and no matter what kind.
9

10   *Id.* at 798; *see also New York Times*, 51 Cal. 3d at 461-62 (unpublished photographs of

11   a public event that photojournalist witnessed are protected by California's Shield Law);

12   *Miller v. Superior Court*, 21 Cal. 4th 883, 897 (1999) ("the shield law applies to

13   unpublished information whether confidential or not").

14   Where, as here, the material is sought by a civil litigant, there is no federal or state

15   constitutional right that can be weighed against Mr. Vary's rights under the California

16   Constitution.  As the court noted in *Playboy*: "[c]ivil litigants do not have a constitutional

17   right to unrestricted discovery of relevant information."  154 Cal. App. 3d at 25; *see also*

18   *McGarry*, 154 Cal. App. 4th at 119-120 (same).  Thus, in civil litigation, no balancing of

19   opposing interests is appropriate because California's Shield Law absolutely protects

20   information from disclosure.  *Id.; New York Times*, 51 Cal. 3d at 462 (a civil litigant has

21   no federal or state constitutional rights which are sufficient to overcome rights under

22   California Shield Law).

23   In *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 89

24   F.R.D. 489, 495 (C.D. Cal. 1981), the federal court granted journalists' motions to quash

25   subpoenas for their depositions and newsgathering materials, relying in part on

26   California's Shield Law, which, the court held, "'reflects a paramount public interest in

27   the maintenance of a vigorous, aggressive and independent press capable of participating

28   in robust, unfettered debate over controversial matters, an interest which has always been

1   a principal concern of the First Amendment.'" *Id.* (quoting *Baker v. F&F Investment*,
2   470 F.2d 778, 782 (2d Cir. 1972)).

3       Under California's Shield Law, Vary has an ***absolute*** constitutional right not to
4   disclose "***any*** unpublished information obtained or prepared in gathering, receiving or
5   processing of information" in this civil case, and Fowler has no competing constitutional
6   right that could overcome Vary's rights.  Cal. Const., art. I, § 2(b) (emphasis added);
7   *New York Times*, 51 Cal. 3d at 456-57, 461-462; *McGarry*, 154 Cal. App. 4th at 119-
8   120; *Playboy*, 154 Cal. App. 3d at 25.  This absolute rule applies "whether or not
9   published information based upon or related to such material has been disseminated."
10  Cal. Const., art. I, § 2(b).[5]

11           **b.      Contrary to Fowler's Contentions, California's Shield**
12                   **Law Applies Here, Not New York's.**

13           ***i.      Under Rule 45, the Laws of this Court Govern.***

14      California's robust protections for reporters apply to this discovery dispute.  Vary
15  is a third-party witness who resides and works in the Central District of California, and
16  has at all times relevant to this matter.  Jassy Decl. ¶ 2; *id.*, Ex. 11 at 70:7-11, 77:17-
17  90:16, 90:2-93:22 (Vary work history).  Any documents in his possession, custody, and
18  control are in the Central District of California.  *Id.*  Fowler served Vary with multiple
19  subpoenas under Federal Rule of Civil Procedure 45.  Under Federal Rule of Civil
20  Procedure 45, motions to compel third-party discovery must be brought in the district

21
22
23
24

25      [5] Fowler makes a weak argument that, although this is civil litigation, applying
26  civil procedure, arising under civil claims of assault, battery, and intentional infliction of
    emotional distress, he is somehow a criminal defendant even though he acknowledges
27  that "this is not a criminal case."  When Fowler's counsel was asked in the meet and
    confer process, "So if Fowler loses this civil case that would mean that he is a criminal?,"
28  his counsel candidly replied: "Of course not."  Jassy Decl. ¶ 8.  Of course not.  Fowler is
    a civil, not a criminal defendant, here.

1  where *compliance* is required, which, in this case, is the Central District of California.

2  Fed. R. Civ. P. 45(d)(2)(B)(i).[6]

3       Third-party subpoenas are assessed under the law of the jurisdiction enforcing

4  them. *Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1271 (W.D. Wash. 2010) (in a

5  federal question case, applying Ninth Circuit, rather than Seventh Circuit, law invoking

6  the reporter's privilege to grant a Washington state journalist's Rule 45 motion to quash

7  while litigation proceeded in Illinois).  "Where the court hearing the discovery dispute

8  and the court hearing the underlying action differ, the court hearing the discovery dispute

9  must apply the choice of law rules of its forum." *Wolpin v. Philip Morris Inc.*, 189 F.R.D.

10  418, 423 (C.D. Cal. 1999) (applying California privilege law in a discovery dispute while

11  underlying litigation proceeded in the Southern District of Florida).  This Court has

12  jurisdiction over this discovery dispute.

13       Rule 45 explicitly provides for courts to hear discovery disputes while underlying

14  litigation is pending in other district courts.  *See* Fed. R. Civ. P. 45(d)(2)(B)(i).  The

15  underlying civil litigation here is a diversity case in the Southern District of New York

16  brought by Rapp (from New York) against Fowler (from Maryland).  *Anthony Rapp v.*

17  *Kevin Spacey Fowler*, No. 20-cv-09586-LHK (S.D.N.Y.).  Fowler's present motion to

18  compel Vary, a California third-party witness for additional deposition testimony and

19  documents, should be addressed under California law.

20       State substantive law preventing disclosure of information applies where not

21  preempted by federal law.  *Lee v. Glob. Tel\*Link Corp.*, No. 15-cv-2495-ODW-PLAX,

22  2017 WL 10575166, at \*7 (C.D. Cal. Sept. 6, 2017) (citing *Robinson v. Kia Motors*

23  *America, Inc.*, 2011 WL 2433369, at \*2 (E.D. Cal. June 13, 2011) (noting that if a state

24  statute protecting the disclosure of information pursuant to a subpoena is a "substantive

25  policy statute," the court then considers whether any federal law preempts the state

26  statute)).  Federal Rule of Civil Procedure 45 explicitly provides for exemption of

27  _____

28  [6] Fowler's passing request to transfer this motion, should be summarily rejected because Vary does not consent to the transfer and Fowler makes no showing of any "exceptional circumstances" that would warrant a transfer.  F.R.C.P. 45(d)(2)(B)(i).

disclosure for "privileged or other protected matter."  Fed. R. Civ. P. 45(d)(3), (e)(2); *see id.*  California's Shield Law is a substantive right enshrined in the California Constitution.  *See Playboy Enters.*, 154 Cal. App. 3d at 27-28.  Federal law does not preempt California's Shield Law.

### ii.    *California Has a Greater Interest in Enforcing its Shield Law.*

"[T]he court hearing the discovery dispute must apply the choice of law rules of its forum."  *Wolpin*, 189 F.R.D. at 423.  Applying the California conflict-of-law analysis, government interests weigh in favor of applying California's Shield Law, rather than New York's reporter's privilege law as Fowler contends.  California courts apply a three-step government interest conflict-of-law analysis.  *Pokorny v. Quixtar, Inc.*, 601 F. 3d 987, 994 (9th Cir. 2010).  Generally, the forum will apply its own law of decision, but the party invoking foreign law bears the burden of showing the foreign forum's interest.  *Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 918 (2001).  Fowler has failed to meet his burden here.

First, the court determines whether the relevant law is the same or different.  California's Shield Law is a state constitutional right and provides absolute immunity for non-party journalists against disclosing unpublished information in civil litigation.  Cal. Const., art. I, § 2(b); *New York Times*, 51 Cal.3d at 455-56.  In contrast, New York's reporter's privilege law is a qualified right subject to a balancing test.  N.Y. Civ. Rights L. § 79-h; *O'Neill v. Oakgrove Const., Inc.*, 523 N.E.2d 277, 277-78 (N.Y. 1988) (recognizing that N.Y. Const., art. I, § 8 and the First Amendment to the U.S. Constitution provide a qualified immunity from disclosure for reporters' information prepared or collected in the course of newsgathering).  In California, there is no balancing test to determine if California's Shield Law applies in a civil case; there is absolute protection from disclosure for third-party reporters' unpublished newsgathering materials in civil litigation.  *New York Times*, 51 Cal. 3d at 461.  Whereas New York state's qualified privilege means the reporter's privilege may be overcome if the disclosure sought is (i)

1  is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's

2  claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any

3  alternative source.  N.Y. Civ. Rights L. § 79-h(c).[7]  The difference between an absolute

4  and qualified immunity is material.

5      Second, because the laws are materially different, the court must then determine

6  what interest each state has in having its law applied.  *Washington Mut. Bank*, 24 Cal.

7  4th at 920.  California has a substantial interest in protecting the constitutional rights of

8  its citizens, while New York's interest here is minimal.  As stated above, Vary resides in

9  California, maintains his files in California, sat for a deposition in California, and

10  engaged in relevant newsgathering communications from California.  Jassy Decl. ¶ 2;

11  *id.*, Ex. 11 at 70:7-11, 77:17-90:16, 90:2-93:22 (Vary work history).  The state of

12  domicile for the person asserting privilege weighs heavily in choice-of-law analysis.  *See*

13  *Connolly Data Sys., Inc. v. Victor Techs., Inc.*, 114 F.R.D. 89, 91 (S.D. Cal. 1987)

14  (applying California state privilege law to discovery dispute while underlying diversity

15  case proceeded in District of Massachusetts).  A source's – *e.g.,* Rapp's – expectation's

16  when speaking with a California reporter also weighs in favor of applying California law.

17  *See id.* at 92.

18      Meanwhile, neither party to this discovery dispute – *i.e.*, neither Fowler nor Vary

19  – is a New York resident, and New York's interest here is only linked to the underlying

20  litigation in the Southern District of New York.  "The fact that the underlying litigation

21  is pending in [a foreign district] is not controlling."  *Connolly Data Sys.*, 114 F.R.D at

22  92.  Fowler argues that New York has an interest because Vary's former employer,

23  *BuzzFeed*, is located in New York.  But Fowler subpoenaed Vary, not *BuzzFeed*, for the

24  documents in Vary's control; and Vary has no possession, custody, or control of his

25

26  [7] Even if the Court were to apply New York's qualified privilege law – which
Vary contends would be improper under a choice of law analysis – Fowler would not be
27  able to overcome New York's qualified privilege which is even more stringent that the
Ninth Circuit's First Amendment-based qualified privilege discussed below.  Because
28  Fowler cannot overcome the Ninth Circuit's privilege, he also could not overcome New
York's privilege.

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1  former employer's documents.  New York has only tenuous interest in a third-party
2  California journalist's assertion of privilege in a California deposition.

3       To the extent the Court finds New York has any interest (Vary asserts it does not),
4  the Court should then take the final step to select the state whose interests would be
5  "more impaired" if its law were not applied.  *Washington Mut. Bank*, 24 Cal. 4th at 920.
6  California, the forum state, the deponent's home state, and the state with the more robust
7  protection for journalists would see its interests more impaired if New York law were
8  applied.  California has elevated its protection of journalists to constitutional status,
9  reflecting "an intention to favor the interest of the press in confidentiality over the general
10 and fundamental interest of the state in having civil actions determined upon a full
11 development of material facts."  *Playboy*, 201 Cal. App. at 27-28.  California has
12 demonstrated a significant government interest in protecting California reporters from
13 overreaching discovery.  Disregarding California law would undermine "the paramount
14 law of the state."  *Id.*  On the other hand, New York has codified its own reporter's shield,
15 albeit a weaker one, into state law.  N.Y. Civ. Rights L. § 79-h.  From a policy
16 perspective, New York shares California's interest in protecting reporters' unpublished
17 newsgathering materials albeit not as robustly as California does.  New York's interests
18 would not be as impaired if California law were applied.  Accordingly, government
19 interests favor applying California's Shield Law in this discovery dispute.

20            **c.     Vary Did Not Waive Any Rights.**

21       Fowler incorrectly asserts that Vary somehow waived his constitutional rights
22 when *Rapp* disclosed some of his communications with Vary in the discovery process.
23 Rapp is the plaintiff, is a party to this litigation, is not a journalist, and did not act in a
24 newsgathering capacity.  Rapp never had a reporter's shield or privilege to assert.  The
25 reporter's privilege "belongs to the journalist alone and cannot be waived by persons
26 other than the journalist."  *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 89
27 F.R.D. 489, 494 (C.D. Cal. 1981) (rejecting the argument that the journalist's privileged
28 was waived when some sources voluntarily identified themselves to the public).  Even

1  under the out-of-circuit authority Fowler cites regarding marital communications (not the

2  reporter's shield or privilege) confirms that "a waiver requires an intentional disclosure

3  of the content of the confidential communication *by the party seeking to invoke the*

4  *privilege*."  *United States v. Bahe*, 128 F.3d 1440, 1442 (10th Cir. 1997) (emphasis

5  added).

6      Fowler points to no authority that requires journalists to intervene and move to

7  quash in order to preserve the reporter's shield or privilege.  Indeed, courts have

8  rejected the argument that journalists *may* intervene to assert their privilege over

9  records held by third-party sources.  *See, e.g., Greenfield v. Schultz*, 660 N.Y.S.2d 624

10 (N.Y. Sup. Ct. N.Y. County 1997), *aff'd in part, vacated in part*, 673 N.Y.S.2d 684 (1st

11 Dep't 1998) (rejecting the *New York Times*' effort to intervene to stop defendant from

12 producing phone billing records that would reveal an editor's confidential sources).

13 Vary does and has firmly asserted the Reporter's Privilege/Shield in this discovery

14 dispute, before the deposition, during the deposition, and after the deposition, and he

15 has not waived it.

16                            *    *    *

17      California's substantive law applies here, and California's Shield Law affords

18 Vary with an absolute constitutional right not to disclose "any unpublished information

19 obtained or prepared in gathering, receiving or processing of information" in this civil

20 case.  Cal. Const., art. I, § 2(b); *New York Times*, 51 Cal. 3d at 456-57, 461-62;

21 *McGarry*, 154 Cal. App. 4th at 119-20; *Playboy*, 154 Cal. App. 3d at 25.  Thus, even if

22 the Court determines that Fowler's motion is procedurally proper, the Court's

23 substantive analysis can end here because of the absolute protections afforded to Vary.

24 The motion should be denied in full and sanctions should be awarded to Vary.

### 6.     Vary Is Also Protected under the First Amendment.

26      Nearly a half century ago, the United States Supreme Court in *Branzburg v. Hayes*,

27 408 U.S. 665, 681 (1972), expressly recognized that newsgathering activities qualify for

28 First Amendment protection: "Without some protection for seeking out the news,

1   freedom of the press could be eviscerated." *Id.*   The Ninth Circuit has held that

2   *Branzburg* established a constitutionally-based qualified privilege for journalists to resist

3   the disclosure of information gathered or obtained during the course of newsgathering

4   activities: "Rooted in the First Amendment, the privilege is a recognition that society's

5   interest in protecting the integrity of the newsgathering process, and in ensuring the free

6   flow of information to the public, is an interest 'of sufficient social importance to justify

7   some incidental sacrifice of sources of facts needed in the administration of justice.'"

8   *Shoen v. Shoen* (*"Shoen I"*), 5 F.3d 1289, 1292 (9th Cir. 1993) (internal citations

9   omitted); *see also U.S. v. Pretzinger*, 542 F.2d 517, 520-521 (9th Cir. 1976) (affirming

10  decision not to compel reporter to disclose source in criminal case, holding that, "district

11  judge must balance the interest of confidentiality of news sources against the needs of

12  the criminal justice system to know the identity of the source").   In holding that the

13  qualified privilege attached to subpoenaed, unpublished, non-confidential information

14  obtained by a book author, the Ninth Circuit stated: "the journalist's privilege recognized

15  in *Branzburg* [is] a partial First Amendment shield that protects journalists against

16  compelled disclosure in all judicial proceedings, civil and criminal alike." *Shoen I*, 5

17  F.3d at 1292.  This privilege reflects "the preferred position of the First Amendment and

18  the importance of a vigorous press." *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981).

19      Courts repeatedly have recognized that subpoenas to non-party journalists pose a

20  pernicious threat to freedom of the press.  Indeed, "news gathering is *essential* to a free

21  press":

22          Without an unfettered press, citizens would be far less able to
23          make informed political, social, and economic choices.  But
            the press' function as a vital source of information is
24          weakened *whenever the ability of journalists to gather news
            is impaired*.
25

26  *Zerilli*, 656 F.2d at 711 (emphasis added) (quoting *New York Times Co. v. United*

27  *States*, 403 U.S. 713, 717 (1971) (Black, J., concurring)).

28

These public policy concerns apply to the compelled disclosure of underlying resource materials, which is precisely the type of material sought here. *Shoen II*, 48 F.3d at 416; *Shoen I*, 5 F.3d at 1294-95 (identifying a number of harms, including the risk of appearing as a "research tool" of the government or private parties); *United States v. La Rouche Campaign*, 841 F.2d 1176, 1182 (1st Cir. 1988) ("We discern a lurking and subtle threat to journalists and their employers if disclosure of outtakes, notes, and other unused information, even if nonconfidential, becomes routine and casually, if not cavalierly, compelled"). This is due in part to the fact that "court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties." *Gonzales v. NBC*, 194 F.3d 29, 35 (2d Cir. 1999). The Ninth Circuit has also recognized the substantial burden that compliance with subpoenas can impose on reporters, noting that the "frequency of subpoenas would not only preempt the otherwise productive time of journalists and other employees but measurably increase expenditures for legal fees." *Shoen I*, 5 F.3d at 1295 (citation omitted).

The Ninth Circuit holds that the privilege applies broadly to protect both confidential *and non-confidential* material and information. *Shoen I*, 5 F.3d at 1295; *Shoen v. Shoen ("Shoen II")*, 48 F.3d 412, 414 (9th Cir. 1995). Disclosure of confidential information or non-confidential unpublished information may be compelled "only upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant to an important issue in the case." *Shoen II*, 48 F.3d at 416. *Shoen II* also requires that the party seeking to overcome the privilege "must [make] a showing of actual relevance; a showing of potential relevance will not suffice." *Id.* The three-part constitutional test under *Shoen II* is necessarily a "high hurdle against compelled disclosure from third party journalists." *Harbert v. Priebe*, 466 F. Supp. 2d 1214 (N.D. Cal. 2006). Fowler's motion makes passing references to these standards, but fails to show how he can satisfy his burden with respect to *any* deposition questions.

### a. Fowler's Deposition Questions About Vary's Newsgathering Are Not "Clearly Relevant."

Fowler's questions about Vary's newsgathering and unpublished reporting are not "***clearly relevant*** to an important issue" in the case. *Shoen II*, 48 F.3d at 416 (emphasis added); *Burke*, 700 F.2d at 77 (holding that First Amendment-privileged materials are not subject to disclosure because a criminal defendant failed to make a "clear and specific showing that [subpoenaed] documents were necessary or critical to the maintenance of his defense").[8] As explained in *Shoen II*, the party seeking to overcome the privilege "must [make] a showing of actual relevance; a showing of potential relevance will not suffice." 48 F.3d at 416. It is not sufficient that the information sought would be "useful." *Krase v. Graco Children Prod., Inc.*, 79 F.3d 346, 351 (2d Cir. 1996). Instead, there must be a finding that the claim for which the information is to be used "virtually rises or falls" on the admission of the materials. *Id.*[9]

Here, Fowler asserts, without any supporting evidence, that certain portions of Vary's article may contradict other purported facts recounted by Fowler. For example, Fowler simply asserts that there were "inconsistent details" such as the last time Rapp

---

[8] *See also United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986) (holding in criminal case that party issuing subpoena for privileged information must show that material is "highly relevant" and "necessary to the proper presentation of the case"); *United States v. Cuthbertson*, 651 F.2d 189, 196 (3d Cir. 1981) (holding that criminal defendant must prove that information is "crucial to the claim"); *Zerilli*, 656 F.2d at 713 (holding that material sought must "go to the 'heart of the matter'" and be "crucial to the case").

[9] For example, courts reject subpoenas to journalists designed to elicit impeachment evidence. *See Holland v. Centennial Homes, Inc.*, 22 Med. L. Rptr. 2270, 2275 (N.Y. Sup. Ct. 1985); *New York v. Troiano*, 11 Med. L. Rptr. 1896, 1899-1900 (N.Y. Sup. Ct. 1985) (asserted need for cross-examination material inadequate to overcome privilege because not critical; applying federal and state journalist's privilege). Even in criminal cases, and even when the information is non-confidential, the need for privileged newsgathering information for purposes of impeachment generally is not sufficient to overcome the qualified privilege. *See, e.g., Burke*, 700 F.2d at 78. *See also United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) (a pre-trial subpoena to a non-party in a criminal case may not be used to gather evidence simply for possible impeachment).

saw Fowler (whether it was at the 2008 Tony Awards or on another occasion) and the purported age of Rapp's friend (a certain John Barrowman), but, even if there were inconsistencies, none of that is "clearly relevant" to whether Fowler assaulted Rapp in 1986. Nothing about Rapp's case against Fowler for assault, battery, and IIED "rises or falls" on these details. In any event, the privilege may not be pierced on speculation that it will lead to impeachment evidence. *See Burke*, 700 F.2d at 78; *Fields*, 663 F.2d at 881.

Vary and his work are not on trial. Vary stands by his newsgathering and the accuracy of his articles, but nothing is stopping Fowler from trying to convince a jury that certain aspects of Rapp's story are false or inconsistent. Whether there are inaccuracies or contradictions in Vary's work in 2017-2018 – which Vary denies – are not "clearly relevant" to whether Fowler sexually assaulted Rapp in 1986, when Rapp was 14 years old. Such supposed inconsistencies are not "clearly relevant," *Shoen II*, 48 F.3d at 416, nor can they otherwise be considered "crucial to the case," *Zerilli*, 656 F.2d at 713.

### b.      Fowler Does Not Show He Has Exhausted Alternative Sources.

Virtually all cases applying the privilege agree that discovery should be denied unless the requesting party has exhausted all alternative sources of obtaining the needed information. For example, in *Cuthbertson*, 651 F.2d at 196, the Third Circuit held that the criminal defendants had not satisfied the element of proving that the "only practical access to the information" sought was from outtakes of interviews, noting that the defendants could "themselves interview these same interviewees, whose identity they know, to obtain the desired information." Similarly, in *New Jersey v. Boiardo*, 414 A.2d 14, 21 (N.J. 1980), the court quashed a subpoena served by a criminal defendant who sought letters written by one of the prosecution's witnesses to a journalist. The court's decision was based in part on the fact that the defendant had failed to show that the information contained in the letters was unavailable from other sources, even if the precise letters were not available from other sources. *Id.* at 23.

1   Here, Fowler has not shown that he has exhausted all alternative sources.  For

2   example, he references Vary's and Rapp's purported discussions about a Mr.

3   Barrowman, but Fowler has not established that he deposed or even interviewed Mr.

4   Barrowman.  Fowler also contends that "Rapp also has mischaracterized Mr. Fowler's

5   response to Mr. Vary's request for comment on his Buzzfeed article."  Even if that were

6   true, Vary would not be able to speak to Rapp's characterizations of Fowler's response,

7   and Fowler can make his own assertions about his own response (or lack thereof) to

8   Vary's repeated requests for comment.

9
    ### c.    Fowler Failed to Show That the Requested Information
10           Would Not Be Cumulative.

11   Cumulative information cannot reach the level of significance required to

12   overcome the reporter's privilege.  *Shoen II*, 48 F.3d at 416; *Burke*, 700 F.2d at 78

13   (subpoena quashed because information sought by criminal defendant "would be merely

14   cumulative and would not defeat [the] First Amendment privilege").  Here, for example,

15   Fowler insists on getting texts from Vary that he already obtained pursuant to document

16   requests from Rapp as a party litigant and asking questions about the messages that he

17   could (or should have) asked Rapp.

18   In sum, Fowler has not articulated how he can overcome all three prongs of the

19   Ninth Circuit's First Amendment-based privilege for *each* question he wants to ask Vary

20   again in deposition, and the Court should not be put to the task of doing that for him.  For

21   this additional reason, Fowler's motion as to the Deposition Subpoena should fail.

22   ### 7.    <u>Vary Is Further Protected by the Common Law.</u>

23   While the Ninth Circuit has recognized the qualified privilege as constitutionally

24   based, federal common law independently supports a journalist's privilege.  This

25   privilege arises under Federal Rule of Evidence Rule 501, which was adopted after

26   *Branzburg* and provides in relevant part that "privilege(s) … shall be governed by the

27   principles of the common law as they may be interpreted by the courts of the United

28

1    States in the light of reason and experience." Fed. R. Evid. 501.[10]  The House Report

2    accompanying the 1975 adoption of Rule 501 explained that the federal common law of

3    privileges is "to be developed by the courts of the United States under a uniform standard

4    applicable both in civil and criminal cases." Fed. R. Evid. 501, Adv. Comm. Note, H.R.

5    No. 93-650 (1974).

6          In *Jaffee v. Redmond,* 518 U.S. 1 (1996), the United States Supreme Court

7    established the framework for evaluating privileges under the federal common law.  As

8    a guide to interpreting Rule 501, the Court referred to the "oft-repeated observation that

9    'the common law is not immutable but flexible, and by its own principles adapts itself to

10   varying conditions.'"  *Id.* at 8.[11]  The Second Circuit held that, "[a]bsent a federal statute

11   to provide specific instructions, courts which must attempt to divine the contours of non-

12   statutory federal law governing the compelled disclosure of confidential journalistic

13   sources must rely on both judicial precedent and well-informed judgment as to the proper

14   federal public policy to be followed in each case." *Baker*, 470 F.2d at 781.  For example,

15   in *Los Angeles Memorial Coliseum Comm'n*, 89 F.R.D. at 492, a federal court in

16   California recognized the well-established qualified federal common law privilege and

17   applied the privilege in a civil case covering journalists' sources and non-confidential

18   work product.

19

20   _____

     [10] But as detailed above, state privilege law may apply in diversity cases.  Fed. R.
21   Evid. 501.

22        [11] The legislative history of Rule 501 – dating back more than forty years –
     anticipated that the law of privilege would evolve to recognize a journalist's privilege.
23   For example, Representative Hungate, Chair of the House Judiciary Subcommittee on
     Criminal Justice and principal draftsman of Rule 501, believed that the rule "permits the
24   courts to develop a privilege for newspaperpeople on a case-by-case basis," and made
     clear that "[t]he language cannot be interpreted as a congressional expression in favor of
25   having no such privilege, nor can the conference action be interpreted as denying to
     newspaperpeople any protection they may have from State newsperson's privilege laws."
26   120 Cong. Rec. H12253-54 (daily ed. Dec. 18, 1974).  *See also Riley v. Chester*, 612 F.2d
27   708, 714 (3d Cir. 1979) (legislative history of Rule 501 "manifests that its flexible
     language was designed to encompass, *inter alia,* a reporter's privilege not to disclose a
28   source").

1    The Ninth Circuit directs federal district courts to look to state law for guidance
2  when the State has directly addressed the issue.  *Gorenc v. Salt River Project Agric.*
3  *Improvement & Power District*, 869 F.2d 503, 505 (9th Cir. 1989); *see also Jaffee*, 518
4  U.S. at 12-13 (same).  There is widespread consensus among the States regarding the
5  existence and value of a journalist's privilege.  Forty states (including California), as well
6  as the District of Columbia, have codified the reporter's privilege.[12]  Courts in nine
7  additional states have recognized the journalist's privilege in at least some context in
8  case law.[13]  Wyoming is the only State that has not weighed in.

9  _____

10    [12] *See* Ala. Code § 12-21-142; Alaska Stat. §§ 09.25.300, *et seq.*; Ariz. Rev. Stat.
Ann. §§ 12-2214, 12-2237; Ark. Code Ann. § 16-85-510; Cal. Const. art. I, § 2(b); Cal.
11  Evid. Code § 1070; Colo. Rev. Stat. §§ 13-90-119, 24-72.5-101, *et seq.*; Conn. Gen. Stat.
Ann. § 52-146t; Del. Code. Ann. tit. 10, §§ 4320, *et seq.*; D.C. Code Ann. §§ 16-4702-
12  4704; Fla. Stat. Ann. § 90.5015; Ga. Code Ann. § 24-5-508; 735 Ill. Comp. Stat. 5/8-
901, *et seq.*; Ind. Code § 34-46-4-1, 34-46-4-2; Kan. Stat. Ann. §§ 60-480, *et seq.*; Ky.
13  Rev. Stat. Ann. § 421.100; La. Rev. Stat. Ann. §§ 45:1451-59; 16 Me. Rev. Stat. Ann. §
61; Md. Code Ann. Cts. & Jud. Proc. § 9-112; Mich. Comp. Laws § 767.5a; Minn. Stat.
14  §§ 595.021, *et seq.*; Mont. Code Ann. §§ 26-1-901, *et seq.*; Neb. Rev. Stat. §§ 20-144, *et
seq.*; Nev. Rev. Stat. Ann. § 49.275, 49.385; N.J. Stat. Ann. §§ 2A:84A21, *et seq.*; N.M.
15  Stat. Ann. § 38-6-7; N.Y. Civ. Rights Law § 79-h; N.C. Gen. Stat. § 8-53.11; N.D. Cent.
Code § 31-01-06.2; Ohio Rev. Code. Ann. §§ 2739.04, 2739.12; Okla. Stat. Ann. tit. 12,
16  § 2506; Or. Rev. Stat. §§ 44.510, *et seq.*; 42 Pa. Cons. Stat. Ann. § 5942; R.I. Gen. Laws
§§ 9-19.1-1, *et seq.*; S.C. Code Ann. § 19-11-100; S.D. HB 1074 (signed Mar. 5, 2019);
17  Tenn. Code Ann. § 24-1-208; Tex. Civ. Proc. & Rem. Code §§ 22.021 *et seq.*; Tex. Code
of Crim. Proc. Act 38.11 & 38.111; Utah Rule of Evid. 509; Wash. Rev. Code § 5.68.010;
18  W. Va. Code § 57-3-10; Wis. Stat. Ann. § 885.14.

19    [13] *See Belanger v.  City and County of Honolulu*, Civ. No. 93-4047-10 (Haw. 1st
Cir. Ct. May 4, 1994) (unpublished) (civil); *Idaho v. Salsbury*, 924 P.2d 208 (Idaho 1996)
20  (criminal); *In re Wright*, 700 P.2d 40 (Idaho 1985) (criminal); *Winegard v. Oxberger*,
258 N.W.2d 847 (Iowa 1977) (civil); *In re John Doe Grand Jury Investigation*, 574
21  N.E.2d 373 (Mass. 1991) (grand jury); *Sinnott v. Boston Retirement Board*, 524 N.E.2d
100 (Mass. 1988) (civil); *Ayash v. Dana-Farber Cancer Institute*, 822 N.E.2d 667 (Mass.
22  2005) (civil); *Eason v. Federal Broad. Co.*, 697 So. 2d 435, 437 (Miss. 1997); *Hawkins
v. Williams*, No. 29,054 (Miss. Cir. Ct. Hinds Co. Mar. 16, 1983) (unpublished opinion)
23  (based on Miss. Const.); *Pope v. Village Apartments, Ltd.*, No. 92-71-436 CV (Miss. 1st
Cir. Ct. Jan. 23, 1995) (unpublished opinion) (Gibbs, J.) (civil); *Mississippi v. Hand*, No.
24  CR89-49-C(T-2) (Miss. 2d Cir. Ct. July 31, 1990) (unpublished opinion) (criminal); *In
re Grand Jury Subpoena*, No. 38664 (Miss. 1st Cir. Ct. Oct. 4, 1989) (unpublished
25  opinion) (grand jury); *Missouri ex rel. Classic III, Inc.*, 954 S.W.2d 650 (Mo. Ct. App.

1    The federal common law, as it looks to state law (in this case California law), is

2  robust and provides another avenue and layer of protection for Vary.  Again, California

3  law provides an absolute protection against the disclosure of any type of unpublished

4  information from a journalist in a civil case.  Fowler's briefing does not address the

5  federal common law even though it was raised repeatedly by Vary's counsel.  *See, e.g.,*

6  Ex. 7 at 7-9.

7    For all of the foregoing reasons, Fowler's motion as to the Deposition Subpoena

8  should be denied.

9  **V.    DOCUMENT SUBPOENA**

10    **A.    Document Request No. 1**

11    ***Mr. Fowler's Request No. 1:***

12    All Documents Concerning any Communication between You and Plaintiff about

13  Fowler.

14    ***Vary's Response to Request No. 1 :***

15    Vary incorporates by reference, as if fully set forth herein, the General Objections

16  set forth above. Vary objects to this Request to the extent that it calls for material

17  protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request

18  to the extent that it calls for material protected from disclosure by the attorney-client

19  privilege, the attorney work product doctrine, and any other applicable privilege or

20  doctrine. Vary objects to this Request to the extent it calls for the disclosure of material

21  protected from disclosure by the right to privacy. Vary objects to this Request as vague,

22  ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the

23  extent that it calls for material that is publicly available and/or equally accessible to the

24  Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not

25

26  1997) (civil); *New Hampshire v. Siel*, 444 A.2d 499 (N.H. 1982) (criminal); *Opinion of*

27  *Justices*, 373 A.2d 644 (N.H. 1977 (civil statutory proceeding); *Vermont v. St. Peter*, 315

28  A.2d 254 (Vt. 1974) (criminal); *Brown v. Virginia*, 204 S.E.2d 429 (Va. 1974) (criminal);
*Clemente v. Clemente*, 56 Va. Cir. 530 (2001) (civil); *Philip Morris Co. v. ABC*, 36 Va.
Cir. 1 (1995) (civil).

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

in Vary's possession, custody, or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

### Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 1:

Mr. Vary's objections to this request are without merit. Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above. Mr. Vary is friend with Mr. Rapp and has known him for over 20 years. He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request. Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information. During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources. The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations. Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit. This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise. Nor has Vary shown that any right of privacy is implicated by this request. Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit. Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23). Mr. Vary also

acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena. *Id.* at 51:5-13, 53:19-22. His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion. Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### Mr. Vary's Statement Regarding Request No. 1:

Vary drew consistent lines for the Document Subpoena: (1) Vary offered to produce published articles concerning Fowler, but Fowler's counsel stated that they already had the published articles and did not want them from Vary; (2) Vary produced his very limited direct communications with Rapp's counsel; (3) Vary would *not* produce unpublished newsgathering information concerning his reporting because of the reporter's privilege/shield as covered by California's Shield Law (Constitution, Art. 1, § 2(b) and California Evidence Code § 1070(a)), the Ninth Circuit's First Amendment-based privilege and the common law; and (4) he would not undertake to search for or produce irrelevant documents – *i.e.,* documents that did not relate to Fowler, Rapp and the allegations in this case – unless Fowler could articulate in the meet and confer process a reason such material was relevant, but Fowler's counsel did not articulate any such reasons. *See* Ex. 7 at 10; Jassy Decl. ¶ 8. During the meet and confer process, Vary's counsel also offered to discuss any documents that did not fall into the aforementioned categories, but Fowler's counsel did take up Vary's counsel on that offer either. *Id.*

Vary repeatedly explained, categorically, what was being withheld on the basis of the Reporter's Privilege/Shield. For example, Vary's counsel's letter of January 5, 2022 repeated the positions taken since before the Vary deposition about the document requests:

> Our position is that all of Defendant's requests for production call for material protected from disclosure by, among other things, the Reporter's Privilege/Shield. Indeed, some do expressly and directly … Without conceding that any documents Mr. Vary may have are relevant to this case, Mr. Vary's only potentially relevant connection to this case is in his capacity as a journalist and any documents he may have pertaining to the matter (such as notes, drafts, communications with sources and editors, etc.) were gathered and/or generated in the course of newsgathering, and are therefore protected from disclosure by the Reporter's Privilege/Shield. Any documents that are not protected by the Reporter's Privilege/Shield would not be relevant.

Ex. 7 at 9.[14] Taking Request No. 1, for example, which asks for all communications between Rapp and Vary about Fowler, Vary's position is that *all* such communications and *all* documents "concerning" such communications would fall within either the Reporter's Privilege/Shield (if unpublished) or would be part of published articles (which Fowler's counsel already had and did not want or need from Vary).

As discussed above, Fowler cannot overcome the absolute protection from disclosure afforded by California's Shield Law. Moreover, he does not articulate how he can satisfy each of the three parts of the Ninth Circuit's First Amendment-based privilege with respect to each Request. And he makes no effort to address the common law privilege.

Fowler also insists on forcing Vary to generate a privilege log. Vary's counsel has explained that imposing such a burden on Vary is unwarranted when Vary is making categorical statements about what was privileged. Vary also asked for authority

---

[14] After sending this letter, Vary discovered – and produced – all communications (which were text messages) between himself and Rapp's counsel. Jassy Decl. ¶ 8.

1  requiring a non-party to produce a privilege log under any circumstances, let alone where

2  the non-party was making categorical assertions of privilege and was being asked to

3  comb through *years* of potentially responsive documents and communications that he

4  would withhold on privilege grounds in any event.  Ex. 7 at 9-10.  Fowler's counsel

5  provided no such authority.  By contrast, Vary provided authority supporting Vary's

6  position that such a log was not necessary and should not be imposed on Vary.  Ex. 7 at

7  10 (citing *Perry v. Schwarzenegger*, 268 F.R.D. 344, 353 (N.D. Cal. 2010) (in order to

8  reduce and eliminate unnecessary burdens on non-party, district court upheld magistrate

9  judge's ruling that non-party did not have to create a privilege log); *Xcentric Ventures,*

10  *LLC v. Borodkin*, 934 F.Supp.2d 1125, 1147 (D. Ariz. 2013) (recognizing unfairness of

11  requiring a non-party to generate a privilege log where the underlying materials would

12  be privileged in any event)).  Fowler's portion of this joint stipulation does not address

13  that authority.

14      Fowler issued three document subpoenas to Vary, two with 30 requests and one

15  with 29 requests.  Even one subpoena to a non-party with 29 requests is, on its face, not

16  consistent with counsel's obligation to take "reasonable steps to avoid imposing undue

17  burden or expense" on a subpoenaed non-party.  FRCP 45(d)(1). Fowler's counsel

18  considered it a compromise to drop just one of 30 requests, and not to seek confidential

19  sources.  It is important to recall that California's Shield Law and the First Amendment

20  privilege apply whether or not information is confidential.  *See Shoen I*, 5 F.3d at 1295;

21  *Shoen II*, 48 F.3d at 414; *Delaney,* 50 Cal. 3d at 798; *New York Times*, 51 Cal. 3d at 461-

22  62; *Miller*, 21 Cal. 4th at 897.

23      It is plain that Fowler (Kevin Spacey) is a well-financed litigant who knows that

24  it was Vary's good reporting that opened the floodgates of accusations against Fowler,

25  by not just Rapp but many others.  Fowler knew he had no suit against Vary, having

26  apologized for what "what would have been deeply inappropriate drunken behavior."

27  Ex. 10 at 4.  Instead, he is piling on Vary and making every effort possible to burden and

28  harass him – with an over seven-hour deposition, 29+ document demands (delivered

65

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1   three times) and now this motion – all with the unabashed aim to strip Vary of his

2   constitutional rights.  Fowler's conduct is an abusive and harassing vendetta against a

3   non-party.

4        Vary respectfully requests that the Court award fees and cost sanctions against

5   Fowler under its inherent power and/or FRCP 45(d)(2)(B)(ii).  *See also Legal Voice v.*

6   *Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013); *Nitsch v. DreamWorks Animation*

7   *SKG Inc.*, 2017 WL 930809 (N.D. Cal. Mar. 9, 2017).  Vary's counsel has incurred more

8   than $18,000 in fees and costs on this motion alone, *not including* sitting for a more than

9   seven-hour deposition and responding to Fowler's *seriatum* subpoenas.  Jassy Decl. ¶ 9.

10       Finally, Vary does not want to burden the Court with repetitive analyses with

11  respect to all of the following Requests.  Instead, Vary will refer back to this Response,

12  and note any particular additional issues that may be unique to other Requests.  For

13  example, to avoid repetition, Vary notes that each of Fowler's broad requests calling for

14  "All Documents concerning" various subjects arguably encompasses attorney-client

15  privileged materials that Vary should not have to disclose.

16

17       **B.      <u>Document Request No. 2</u>**

18       ***Mr. Fowler's Request No. 2:***

19       All Documents Concerning any Communication between You and Plaintiff about

20  Fowler's alleged sexual abuse and/or assault of Plaintiff.

21       ***Mr. Vary's Response to Request No. 2:***

22       Vary incorporates by reference, as if fully set forth herein, the General Objections

23  set forth above. Vary objects to this Request to the extent that it calls for material

24  protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request

25  to the extent that it calls for material protected from disclosure by the attorney-client

26  privilege, the attorney work product doctrine, and any other applicable privilege or

27  doctrine. Vary objects to this Request to the extent it calls for the disclosure of material

28  protected from disclosure by the right to privacy. Vary objects to this Request as vague,

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody, or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 2 :***

Mr. Vary's objections to this request are without merit.  Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request.  Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information.  During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources.  The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations.  Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit.  This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise.  Nor has Vary shown that any right of privacy is implicated by this request. Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit.  Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).   Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena.  *Id.* at 51:5-13, 53:19-22.  His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### *Mr. Vary's Statement Regarding Request No. 2:*

Vary respectfully refers the Court to his statement regarding Request No. 1.

### C. <u>Document Request No. 3</u>

### *Mr. Fowler's Request No. 3:*

All Documents Concerning any action You took relating to Fowler's alleged sexual abuse and/or assault of Plaintiff after learning of it.

### *Mr. Vary's Response to Request No . 3:*

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client

privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody, or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

### *Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 3:*

Mr. Vary's objections to this request are without merit. Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above. Mr. Vary is friend with Mr. Rapp and has known him for over 20 years. He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request. Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information. During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources. The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations. Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit. This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise. Nor has Vary shown that any right of privacy is implicated by this request.

Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit. Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23). Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena. *Id*. at 51:5-13, 53:19-22. His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion. Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### Mr. Vary's Statement Regarding Request No. 3:

Vary respectfully refers the Court to his statement regarding Request No. 1.


### D.    Document Request No. 4

### Mr. Fowler's Request No. 4:

All Documents Concerning any Communication between You and Plaintiff about any claim by Plaintiff of sexual misconduct or sexual assault.

### Mr. Vary's Response to Request No . 4:

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material

protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody, or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 4:***

Mr. Vary's objections to this request are without merit. Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above. Mr. Vary is friend with Mr. Rapp and has known him for over 20 years. He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request. Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information. During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources. The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations. Mr. Fowler has exhausted other avenues to obtain this information.

1      Mr. Vary's other objections likewise are without merit. This request does not call

2  for any attorney-client privileged or work product information, nor has Vary shown

3  otherwise. Nor has Vary shown that any right of privacy is implicated by this request.

4  Vary already has known about and implicitly acquiesced to the production of his text

5  messages with Rapp.

6      Mr. Vary's claims that this request calls for material outside his possession or

7  would impose an undue burden are unsubstantiated and without merit. Mr. Vary

8  acknowledged at deposition he likely still possesses at least his text messages with Rapp.

9  *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23). Mr. Vary also

10  acknowledged he has not even attempted to look for any documents responsive to the

11  Records Subpoena. *Id*. at 51:5-13, 53:19-22. His claim of undue burden therefore is

12  unsubstantiated and illusory.

13      Finally, to the extent Mr. Vary is permitted to withhold any documents based on

14  the asserted reporter's privilege or reporter's shield at this time, he should produce a log

15  to allow the Court and parties to better evaluate that assertion. Under Federal Rule of

16  Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege

17  – must "describe the nature of the withheld documents, communications, or tangible

18  things in a manner that, without revealing information itself privileged or protected, will

19  enable the parties to assess the claim." Mr. Vary has not provided such information here.

20  Indeed, he acknowledged at deposition he has done nothing to even look for potentially

21  responsive documents.

22      ***Mr. Vary's Statement Regarding Request No. 4:***

23      Vary respectfully refers the Court to his statement regarding Request No. 1.

24

25      **E.**    **Document Request No. 5**

26      ***Mr. Fowler's Request No. 5:***

27      All Documents Concerning any action You took relating to Fowler's alleged

28  sexual abuse and/or assault of Plaintiff after learning of it.

1       ***Mr. Vary's Response to Request No . 5:***

2              Vary incorporates by reference, as if fully set forth herein, the General Objections

3       set forth above. Vary objects to this Request to the extent that it calls for material

4       protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request

5       to the extent that it calls for material protected from disclosure by the attorney-client

6       privilege, the attorney work product doctrine, and any other applicable privilege or

7       doctrine. Vary objects to this Request to the extent it calls for the disclosure of material

8       protected from disclosure by the right to privacy. Vary objects to this Request as vague,

9       ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the

10      extent that it calls for material that is publicly available and/or equally accessible to the

11      Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not

12      in Vary's possession, custody, or control. Vary objects to this Request to the extent that

13      it calls for material that is not relevant and/or not reasonably calculated to lead to the

14      discovery of admissible evidence. Vary objects to this Request on the grounds that the

15      burden associated with searching for

16      ***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response***
17      ***to Document Request No. 5:***

18             Mr. Vary's objections to this request are without merit.  Mr. Vary's objections

19      based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed

20      above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has

21      made no showing that any reporters' privilege/shield applies to some or all documents

22      called for by this request.  Even if some material were covered by that protection, it does

23      not apply for the reasons explained above, especially given there is no suggestion it

24      implicates confidential information.  During the meet and confer conference between

25      counsel, Mr. Fowler limited the scope by stating he is not seeking information from

26      confidential sources.  The material sought by this request cannot be obtained elsewhere

27      and is necessary for important issues in this case, including Rapp's credibility and the

28

details of his allegations.   Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit.  This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise.  Nor has Vary shown that any right of privacy is implicated by this request. Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit.   Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).   Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena.  *Id*. at 51:5-13, 53:19-22.  His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### *Mr. Vary's Statement Regarding Request No. 5:*

Vary respectfully refers the Court to his statement regarding Request No. 1.

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1    **F.    Document Request No. 6**

2    ***Mr. Fowler's Request No. 6:***

3    All Documents in Your custody, possession, or control Concerning any claim by

4    Plaintiff that he was a victim of sexual misconduct or sexual assault.

5    ***Mr. Vary's Response to Request No . 6:***

6    Vary incorporates by reference, as if fully set forth herein, the General Objections

7    set forth above. Vary objects to this Request to the extent that it calls for material

8    protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request

9    to the extent that it calls for material protected from disclosure by the attorney-client

10    privilege, the attorney work product doctrine, and any other applicable privilege or

11    doctrine. Vary objects to this Request to the extent it calls for the disclosure of material

12    protected from disclosure by the right to privacy. Vary objects to this Request as vague,

13    ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the

14    extent that it calls for material that is publicly available and/or equally accessible to the

15    Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not

16    in Vary's possession, custody or control. Vary objects to this Request to the extent that it

17    calls for material that is not relevant and/or not reasonably calculated to lead to the

18    discovery of admissible evidence. Vary objects to this Request on the grounds that the

19    burden associated with searching for and producing potentially responsive materials, if

20    any, is not proportionate to the relevance, if any, of the requested material.

21    ***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response***
22    ***to Document Request No. 6:***

23    Mr. Vary's objections to this request are without merit.   Mr. Vary's

24    objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons

25    discussed above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.

26    He has made no showing that any reporters' privilege/shield applies to some or all

27    documents called for by this request.   Even if some material were covered by that

28    protection, it does not apply for the reasons explained above, especially given there is no

suggestion it implicates confidential information.  During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources.  The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations.  Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit.  This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise.  Nor has Vary shown that any right of privacy is implicated by this request. Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit.  Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).  Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena.  *Id*. at 51:5-13, 53:19-22.  His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1    ***Mr. Vary's Statement Regarding Request No. 6:***

2    Vary respectfully refers the Court to his statement regarding Request No. 1.

3

4    ### G.    Document Request No. 9

5    ***Mr. Fowler's Request No. 9:***

6    All Documents Concerning any Communication between You and Plaintiff about

7    any sexual encounter involving Plaintiff.

8    ***Mr. Vary's Response to Request No . 9:***

9    Vary incorporates by reference, as if fully set forth herein, the General Objections

10   set forth above. Vary objects to this Request to the extent that it calls for material

11   protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request

12   to the extent that it calls for material protected from disclosure by the attorney-client

13   privilege, the attorney work product doctrine, and any other applicable privilege or

14   doctrine. Vary objects to this Request to the extent it calls for the disclosure of material

15   protected from disclosure by the right to privacy. Vary objects to this Request as vague,

16   ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the

17   extent that it calls for material that is publicly available and/or equally accessible to the

18   Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not

19   in Vary's possession, custody, or control. Vary objects to this Request to the extent that

20   it calls for material that is not relevant and/or not reasonably calculated to lead to the

21   discovery of admissible evidence. Vary objects to this Request on the grounds that the

22   burden associated with searching for and producing potentially responsive materials, if

23   any, is not proportionate to the relevance, if any, of the requested material.

24   ***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response***
25   ***to Document Request No. 9:***

26   Mr. Vary's objections to this request are without merit.  Mr. Vary's objections

27   based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed

28   above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has

made no showing that any reporters' privilege/shield applies to some or all documents called for by this request.  Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information.  During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources.  The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations.  Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit.  This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise.  Nor has Vary shown that any right of privacy is implicated by this request.  Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit.  Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp.  *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).  Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena.  *Id*. at 51:5-13, 53:19-22.  His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Mr. Vary has not provided such information here.

Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### *Mr. Vary's Statement Regarding Request No. 9:*

Vary respectfully refers the Court to his statement regarding Request No. 1. Vary adds that this overbroad request calls for an unwarranted invasion of the right to privacy.

### H.    Document Request No. 11

### *Mr. Fowler's Request No. 11:*

All Documents Concerning Any Communication between You and Plaintiff about any psychological injury or emotional distress suffered by Plaintiff.

### *Mr. Vary's Response to Request No . 11:*

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody, or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden .associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

1    ***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response
2    to Document Request No. 11:***

3    Mr. Vary's objections to this request are without merit.  Mr. Vary's objections

4    based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed

5    above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has

6    made no showing that any reporters' privilege/shield applies to some or all documents

7    called for by this request.  Even if some material were covered by that protection, it does

8    not apply for the reasons explained above, especially given there is no suggestion it

9    implicates confidential information.  During the meet and confer conference between

10   counsel, Mr. Fowler limited the scope by stating he is not seeking information from

11   confidential sources.  The material sought by this request cannot be obtained elsewhere

12   and is necessary for important issues in this case, including Rapp's credibility and the

13   details of his allegations.  Mr. Fowler has exhausted other avenues to obtain this

14   information.

15   Mr. Vary's other objections likewise are without merit.  This request does not call

16   for any attorney-client privileged or work product information, nor has Vary shown

17   otherwise.  Nor has Vary shown that any right of privacy is implicated by this request.

18   Vary already has known about and implicitly acquiesced to the production of his text

19   messages with Rapp.

20   Mr. Vary's claims that this request calls for material outside his possession or

21   would impose an undue burden are unsubstantiated and without merit.  Mr. Vary

22   acknowledged at deposition he likely still possesses at least his text messages with Rapp.

23   *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).  Mr. Vary also

24   acknowledged he has not even attempted to look for any documents responsive to the

25   Records Subpoena.  *Id*. at 51:5-13, 53:19-22.  His claim of undue burden therefore is

26   unsubstantiated and illusory.

27   Finally, to the extent Mr. Vary is permitted to withhold any documents based on

28   the asserted reporter's privilege or reporter's shield at this time, he should produce a log

1  to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of

2  Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege

3  – must "describe the nature of the withheld documents, communications, or tangible

4  things in a manner that, without revealing information itself privileged or protected, will

5  enable the parties to assess the claim." Mr. Vary has not provided such information here.

6  Indeed, he acknowledged at deposition he has done nothing to even look for potentially

7  responsive documents.

8         ***Mr. Vary's Statement Regarding Request No. 11:***

9         Vary respectfully refers the Court to his statement regarding Request No. 1.  Vary

10  adds that this overbroad request calls for an unwarranted invasion of the right to privacy.

11

12         **I.**       **<u>Document Request No. 12</u>**

13         ***Mr. Fowler's Request No. 12:***

14         All Documents Concerning any Communication between You and Plaintiff about

15  Plaintiff's experience working on Broadway in "Precious Sons" in approximately 1986.

16         ***Mr. Vary's Response to Request No . 12:***

17         Vary incorporates by reference, as if fully set forth herein, the General Objections

18  set forth above. Vary objects to this Request to the extent that it calls for material

19  protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request

20  to the extent that it calls for material protected from disclosure by the attorney-client

21  privilege, the attorney work product doctrine, and any other applicable privilege or

22  doctrine. Vary objects to this Request to the extent it calls for the disclosure of material

23  protected from disclosure by the right to privacy. Vary objects to this Request as vague,

24  ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the

25  extent that it calls for material that is publicly available and/or equally accessible to the

26  Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not

27  in Vary's possession, custody, or control. Vary objects to this Request to the extent that

28  it calls for material that is not relevant and/or not reasonably calculated to lead to the

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1   discovery of admissible evidence. Vary objects to this Request on the grounds that the
2   burden associated with searching for and producing potentially responsive materials, if
3   any, is not proportionate to the relevance, if any, of the requested material.

4   ***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response
5   to Document Request No. 12:***

6       Mr. Vary's objections to this request are without merit.  Mr. Vary's objections
7   based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed
8   above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has
9   made no showing that any reporters' privilege/shield applies to some or all documents
10  called for by this request.  Even if some material were covered by that protection, it does
11  not apply for the reasons explained above, especially given there is no suggestion it
12  implicates confidential information.  During the meet and confer conference between
13  counsel, Mr. Fowler limited the scope by stating he is not seeking information from
14  confidential sources.  The material sought by this request cannot be obtained elsewhere
15  and is necessary for important issues in this case, including Rapp's credibility and the
16  details of his allegations.   Mr. Fowler has exhausted other avenues to obtain this
17  information.

18      Mr. Vary's other objections likewise are without merit.  This request does not call
19  for any attorney-client privileged or work product information, nor has Vary shown
20  otherwise.  Nor has Vary shown that any right of privacy is implicated by this request.
21  Vary already has known about and implicitly acquiesced to the production of his text
22  messages with Rapp.

23      Mr. Vary's claims that this request calls for material outside his possession or
24  would impose an undue burden are unsubstantiated and without merit.  Mr. Vary
25  acknowledged at deposition he likely still possesses at least his text messages with Rapp.
26  *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).   Mr. Vary also
27  acknowledged he has not even attempted to look for any documents responsive to the
28

Records Subpoena.  *Id.* at 51:5-13, 53:19-22.  His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### *Mr. Vary's Statement Regarding Request No. 12:*

Vary respectfully refers the Court to his statement regarding Request No. 1.  Vary adds that this Request is not relevant to this action, and Fowler does not explain how it could be.

### J.    <u>Document Request No. 13</u>

### *Mr. Fowler's Request No. 13:*

All Documents Concerning any Communication between You and Plaintiff about Plaintiffs experience working on Broadway in "The Little Prince."

### *Mr. Vary's Response to Request No . 13:*

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague,

ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody, or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

### *Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 13:*

Mr. Vary's objections to this request are without merit.  Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request.  Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information.  During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources.  The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations.  Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit.  This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise.  Nor has Vary shown that any right of privacy is implicated by this request. Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit. Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23). Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena. *Id*. at 51:5-13, 53:19-22. His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion. Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### *Mr. Vary's Statement Regarding Request No. 13:*

Vary respectfully refers the Court to his statement regarding Request No. 1. Vary adds that this Request is not relevant to this action, and Fowler does not explain how it could be.

### K.    Document Request No. 14

### *Mr. Fowler's Request No. 14:*

All Documents Concerning any Communication between You and Plaintiff about Plaintiffs' experience working as an actor in New York before he turned 18 years old.

### *Mr. Vary's Response to Request No . 14:*

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material

protected from disclosure by the Reporter ' s Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague, ambiguous, overbroad and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary ' s possession, custody or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

### Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 14:

Mr. Vary's objections to this request are without merit. Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above. Mr. Vary is friend with Mr. Rapp and has known him for over 20 years. He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request. Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information. During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources. The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations. Mr. Fowler has exhausted other avenues to obtain this information.

1    Mr. Vary's other objections likewise are without merit.  This request does not call

2    for any attorney-client privileged or work product information, nor has Vary shown

3    otherwise.  Nor has Vary shown that any right of privacy is implicated by this request.

4    Vary already has known about and implicitly acquiesced to the production of his text

5    messages with Rapp.

6    Mr. Vary's claims that this request calls for material outside his possession or

7    would impose an undue burden are unsubstantiated and without merit.  Mr. Vary

8    acknowledged at deposition he likely still possesses at least his text messages with Rapp.

9    *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).  Mr. Vary also

10   acknowledged he has not even attempted to look for any documents responsive to the

11   Records Subpoena.  *Id*. at 51:5-13, 53:19-22.  His claim of undue burden therefore is

12   unsubstantiated and illusory.

13   Finally, to the extent Mr. Vary is permitted to withhold any documents based on

14   the asserted reporter's privilege or reporter's shield at this time, he should produce a log

15   to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of

16   Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege

17   – must "describe the nature of the withheld documents, communications, or tangible

18   things in a manner that, without revealing information itself privileged or protected, will

19   enable the parties to assess the claim."  Mr. Vary has not provided such information here.

20   Indeed, he acknowledged at deposition he has done nothing to even look for potentially

21   responsive documents.

22   ***Mr. Vary's Statement Regarding Request No. 14:***

23   Vary respectfully refers the Court to his statement regarding Request No. 1.  Vary

24   adds that this Request is not relevant to this action, and Fowler does not explain how it

25   could be.

26

27

28

**L.    Document Request No. 15**

*Mr. Fowler's Request No. 15:*

All Documents Concerning any Communication between You and Plaintiff about Yul Brynner.

*Mr. Vary's Response to Request No . 15:*

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague, ambiguous, overbroad and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

*Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 15:*

Mr. Vary's objections to this request are without merit.  Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request.  Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it

implicates confidential information. During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources. The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations. Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit. This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise. Nor has Vary shown that any right of privacy is implicated by this request. Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit. Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23). Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena. *Id*. at 51:5-13, 53:19-22. His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion. Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

1    ***Mr. Vary's Statement Regarding Request No. 15:***

2        Vary respectfully refers the Court to his statement regarding Request No. 1. Vary

3    adds that this Request is not relevant to this action, and Fowler does not explain how it

4    could be.

5

6    **M.    <u>Document Request No. 16</u>**

7    ***Mr. Fowler's Request No. 16:***

8        All Documents Concerning any Communication between You and Plaintiff about

9    Susan Tyrell.

10   ***Mr. Vary's Response to Request No . 16:***

11       Vary incorporates by reference, as if fully set forth herein, the General Objections

12   set forth above. Vary objects to this Request to the extent that it calls for material

13   protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request

14   to the extent that it calls for material protected from disclosure by the attorney-client

15   privilege, the attorney work product doctrine, and any other applicable privilege or

16   doctrine. Vary objects to this Request to the extent it calls for the disclosure of material

17   protected from disclosure by the right to privacy. Vary objects to this Request as vague,

18   ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the

19   extent that it calls for material that is publicly available and/or equally accessible to the

20   Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not

21   in Vary's possession, custody, or control. Vary objects to this Request to the extent that

22   it calls for material that is not relevant and/or not reasonably calculated to lead to the

23   discovery of admissible evidence. Vary objects to this Request on the grounds that the

24   burden associated with searching for and producing potentially responsive materials, if

25   any, is not proportionate to the relevance, if any, of the requested material.

26

27

28

1

2

***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 16:***

3

Mr. Vary's objections to this request are without merit.  Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request.  Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information.  During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources.  The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations.  Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit.  This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise.  Nor has Vary shown that any right of privacy is implicated by this request.  Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit.  Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp.  *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).  Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena.  *Id.* at 51:5-13, 53:19-22.  His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log

to allow the Court and parties to better evaluate that assertion. Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### *Mr. Vary's Statement Regarding Request No. 16:*

Vary respectfully refers the Court to his statement regarding Request No. 1. Vary adds that this Request is not relevant to this action, and Fowler does not explain how it could be.

### N.    Document Request No. 17

### *Mr. Fowler's Request No. 17:*

All Documents Concerning any Communication between You and Plaintiff about Ed Harris.

### *Mr. Vary's Response to Request No . 17:*

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody, or control. Vary objects to this Request to the extent that

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

**_Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 17:_**

Mr. Vary's objections to this request are without merit.  Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request.  Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information.  During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources.  The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations.  Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit.  This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise.  Nor has Vary shown that any right of privacy is implicated by this request.  Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit.  Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp.  _See, e.g._, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).  Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the

Records Subpoena. *Id*. at 51:5-13, 53:19-22. His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion. Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### ***Mr. Vary's Statement Regarding Request No. 17:***

Vary respectfully refers the Court to his statement regarding Request No. 1. Vary adds that this Request is not relevant to this action, and Fowler does not explain how it could be.

### **O.    Document Request No. 18**

### ***Mr. Fowler's Request No. 18:***

All Documents Concerning any Communication between You and Plaintiff about Amy Madigan.

### ***Mr. Vary's Response to Request No . 18:***

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague,

ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody, or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

### *Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 18:*

Mr. Vary's objections to this request are without merit.  Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request.  Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information.  During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources.  The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations.  Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit.  This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise.  Nor has Vary shown that any right of privacy is implicated by this request.  Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit.   Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).   Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena.  *Id*. at 51:5-13, 53:19-22.  His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### *Mr. Vary's Statement Regarding Request No. 18:*

Vary respectfully refers the Court to his statement regarding Request No. 1.  Vary adds that this Request is not relevant to this action, and Fowler does not explain how it could be.

### P.    Document Request No. 19

### *Mr. Fowler's Request No. 19:*

All Documents Concerning any Communication between You and Fowler.

### *Mr. Vary's Response to Request No . 19:*

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request

to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody, or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

### Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 19:

Mr. Vary's objections to this request are without merit. Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above. Mr. Vary is friend with Mr. Rapp and has known him for over 20 years. He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request. Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information. During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources. The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations. Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit. This request does not call for any attorney-client privileged or work product information, nor has Vary shown

otherwise.  Nor has Vary shown that any right of privacy is implicated by this request. Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit.  Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).  Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena.  *Id*. at 51:5-13, 53:19-22.  His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### *Mr. Vary's Statement Regarding Request No. 19:*

Vary respectfully refers the Court to his statement regarding Request No. 1.

### Q.    <u>Document Request No. 20</u>

### *Mr. Fowler's Request No. 20:*

All Documents Concerning any Communication between You and any Person about this lawsuit.

1    ***Mr. Vary's Response to Request No . 20:***

2    Vary incorporates by reference, as if fully set forth herein, the General Objections

3    set forth above. Vary objects to this Request to the extent that it calls for material

4    protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request

5    to the extent that it calls for material protected from disclosure by the attorney-client

6    privilege, the attorney work product doctrine, and any other applicable privilege or

7    doctrine. Vary objects to this Request to the extent it calls for the disclosure of material

8    protected from disclosure by the right to privacy. Vary objects to this Request as vague,

9    ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the

10    extent that it calls for material that is publicly available and/or equally accessible to the

11    Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not

12    in Vary' s possession, custody or control. Vary objects to this Request to the extent that

13    it calls for material that is not relevant and/ or not reasonably calculated to lead to the

14    discovery of admissible evidence. Vary objects to this Request on the grounds that the

15    burden associated with searching for and producing potentially responsive materials, if

16    any, is not proportionate to the relevance, if any, of the requested material.

17    ***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response***
18    ***to Document Request No. 20:***

19    Mr. Vary's objections to this request are without merit.  Mr. Vary's objections

20    based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed

21    above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has

22    made no showing that any reporters' privilege/shield applies to some or all documents

23    called for by this request.  Even if some material were covered by that protection, it does

24    not apply for the reasons explained above, especially given there is no suggestion it

25    implicates confidential information.  During the meet and confer conference between

26    counsel, Mr. Fowler limited the scope by stating he is not seeking information from

27    confidential sources.  The material sought by this request cannot be obtained elsewhere

28    and is necessary for important issues in this case, including Rapp's credibility and the

details of his allegations.   Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit.  This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise.  Nor has Vary shown that any right of privacy is implicated by this request. Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit.   Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).   Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena.  *Id*. at 51:5-13, 53:19-22.  His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### *Mr. Vary's Statement Regarding Request No. 20:*

Vary respectfully refers the Court to his statement regarding Request No. 1.  Vary adds that this Request improperly calls for the disclosure of documents protected from disclosure by the attorney-client privilege.

1    **R.    Document Request No. 21**

2    *Mr. Fowler's Request No. 21:*

3    All Documents Concerning any Communication between You and Peter Saghir,

4    Richard Steigman, Rachel Jacobs, or anyone else at the law firm Gair, Gair, Conason,

5    Rubinowitz, Bloom, Hershenhorn, Steigman & Mackauf, which is counsel for Plaintiff

6    in this action.

7    *Mr. Vary's Response to Request No . 21:*

8    Vary incorporates by reference, as if fully set forth herein, the General Objections

9    set forth above. Vary objects to this Request to the extent that it calls for material

10   protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request

11   to the extent that it calls for material protected from disclosure by the attorney-client

12   privilege, the attorney work product doctrine, and any other applicable privilege or

13   doctrine. Vary objects to this Request to the extent it calls for the disclosure of material

14   protected from disclosure by the right to privacy. Vary objects to this Request as vague,

15   ambiguous, overbroad and unduly burdensome. Vary objects to this Request to the extent

16   that it calls for material that is publicly available and/or equally accessible to the

17   Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not

18   in Vary's possession, custody or control. Vary objects to this Request to the extent that it

19   calls for material that is not relevant and/or not reasonably calculated to lead to the

20   discovery of admissible evidence. Vary objects to this Request on the grounds that the

21   burden associated with searching for and producing potentially responsive materials, if

22   any, is not proportionate to the relevance, if any, of the requested material.

23
     ***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response
24   to Document Request No. 21:***

25   Mr. Vary's objections to this request are without merit.  Mr. Vary's objections

26   based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed

27   above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has

28   made no showing that any reporters' privilege/shield applies to some or all documents

called for by this request. Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information. During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources. The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations. Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit. This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise. Nor has Vary shown that any right of privacy is implicated by this request. Vary already has produced two of his text exchanges with Rapp's counsel, and any remaining messages should also be produced.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit. Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23). Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena. *Id.* at 51:5-13, 53:19-22. His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion. Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Mr. Vary has not provided such information here.

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### Mr. Vary's Statement Regarding Request No. 21:

Vary already produced all of the responsive documents he has in response to this Request as Fowler's portion of the Joint Stipulation acknowledges.

### S.    Document Request No. 26

### Mr. Fowler's Request No. 26:

All Documents Concerning any Communication between You and any Person about Fowler.

### Mr. Vary's Response to Request No . 26:

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody, or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

1  ***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response***
2  ***to Document Request No. 26:***

3      Mr. Vary's objections to this request are without merit.  Mr. Vary's objections

4  based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed

5  above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has

6  made no showing that any reporters' privilege/shield applies to some or all documents

7  called for by this request.  Even if some material were covered by that protection, it does

8  not apply for the reasons explained above, especially given there is no suggestion it

9  implicates confidential information.  During the meet and confer conference between

10 counsel, Mr. Fowler limited the scope by stating he is not seeking information from

11 confidential sources.  The material sought by this request cannot be obtained elsewhere

12 and is necessary for important issues in this case, including Rapp's credibility and the

13 details of his allegations.  Mr. Fowler has exhausted other avenues to obtain this

14 information.

15     Mr. Vary's other objections likewise are without merit.  This request does not call

16 for any attorney-client privileged or work product information, nor has Vary shown

17 otherwise.  Nor has Vary shown that any right of privacy is implicated by this request.

18 Vary already has known about and implicitly acquiesced to the production of his text

19 messages with Rapp.

20     Mr. Vary's claims that this request calls for material outside his possession or

21 would impose an undue burden are unsubstantiated and without merit.  Mr. Vary

22 acknowledged at deposition he likely still possesses at least his text messages with Rapp.

23 *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).  Mr. Vary also

24 acknowledged he has not even attempted to look for any documents responsive to the

25 Records Subpoena.  *Id*. at 51:5-13, 53:19-22.  His claim of undue burden therefore is

26 unsubstantiated and illusory.

27     Finally, to the extent Mr. Vary is permitted to withhold any documents based on

28 the asserted reporter's privilege or reporter's shield at this time, he should produce a log

to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### Mr. Vary's Statement Regarding Request No. 26:

Vary respectfully refers the Court to his statement regarding Request No. 1.

### T.    Document Request No. 27

### Mr. Fowler's Request No. 27:

All Documents, Concerning the article You wrote for BuzzFeed News title, "Actor Anthony Rapp: Kevin Spacey Made a Sexual Advance Toward Me When I was 14."

### Mr. Vary's Response to Request No . 27:

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague, ambiguous, overbroad and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the

1  burden associated with searching for and producing potentially responsive materials, if
2  any, is not proportionate to the relevance, if any, of the requested material.

3  ***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response***
4  ***to Document Request No. 27:***

5       Mr. Vary's objections to this request are without merit.  Mr. Vary's objections
6  based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed
7  above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has
8  made no showing that any reporters' privilege/shield applies to some or all documents
9  called for by this request.  Even if some material were covered by that protection, it does
10 not apply for the reasons explained above, especially given there is no suggestion it
11 implicates confidential information.  During the meet and confer conference between
12 counsel, Mr. Fowler limited the scope by stating he is not seeking information from
13 confidential sources.  The material sought by this request cannot be obtained elsewhere
14 and is necessary for important issues in this case, including Rapp's credibility and the
15 details of his allegations.  Mr. Fowler has exhausted other avenues to obtain this
16 information.

17      Mr. Vary's other objections likewise are without merit.  This request does not call
18 for any attorney-client privileged or work product information, nor has Vary shown
19 otherwise.  Nor has Vary shown that any right of privacy is implicated by this request.
20 Vary already has known about and implicitly acquiesced to the production of his text
21 messages with Rapp.

22      Mr. Vary's claims that this request calls for material outside his possession or
23 would impose an undue burden are unsubstantiated and without merit.  Mr. Vary
24 acknowledged at deposition he likely still possesses at least his text messages with Rapp.
25 *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).  Mr. Vary also
26 acknowledged he has not even attempted to look for any documents responsive to the
27 Records Subpoena.  *Id*. at 51:5-13, 53:19-22.  His claim of undue burden therefore is
28 unsubstantiated and illusory.

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Mr. Vary has not provided such information here.  Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### *Mr. Vary's Statement Regarding Request No. 27:*

Vary respectfully refers the Court to his statement regarding Request No. 1.


### U.       Document Request No. 28

### *Mr. Fowler's Request No. 28:*

All Documents, Including notes, recordings from any interviews, drafts of articles, or any other materials, Concerning Mr. Rapp's allegations against Mr. Fowler.

### *Mr. Vary's Response to Request No . 28:*

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not in Vary's possession, custody, or control. Vary objects to this Request to the extent that

it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

### Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 28:

Mr. Vary's objections to this request are without merit.  Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request.  Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information.  During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources.  The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations.   Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit.  This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise.  Nor has Vary shown that any right of privacy is implicated by this request. Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit.   Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).   Mr. Vary also acknowledged he has not even attempted to look for any documents responsive to the

Records Subpoena.  *Id*. at 51:5-13, 53:19-22.  His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion.  Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### *Mr. Vary's Statement Regarding Request No. 28:*

Vary respectfully refers the Court to his statement regarding Request No. 1.

### V.    <u>Document Request No. 29</u>

### *Plaintiff's Request No. 29:*

All Documents in your custody, possession, or control Concerning Fowler.

### *Mr. Vary's Response to Request No . 29:*

Vary incorporates by reference, as if fully set forth herein, the General Objections set forth above. Vary objects to this Request to the extent that it calls for material protected from disclosure by the Reporter's Privilege/Shield. Vary objects to this Request to the extent that it calls for material protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and any other applicable privilege or doctrine. Vary objects to this Request to the extent it calls for the disclosure of material protected from disclosure by the right to privacy. Vary objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Vary objects to this Request to the extent that it calls for material that is publicly available and/or equally accessible to the Subpoenaing Party. Vary objects to this Request to the extent that it calls for material not

in Vary's possession, custody, or control. Vary objects to this Request to the extent that it calls for material that is not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Vary objects to this Request on the grounds that the burden associated with searching for and producing potentially responsive materials, if any, is not proportionate to the relevance, if any, of the requested material.

***Mr. Fowler's Statement Regarding the Insufficiency of Mr. Vary's Response to Document Request No. 29:***

Mr. Vary's objections to this request are without merit.  Mr. Vary's objections based on the "Reporter's Privilege/Shield" are inapposite for the same reasons discussed above.  Mr. Vary is friend with Mr. Rapp and has known him for over 20 years.  He has made no showing that any reporters' privilege/shield applies to some or all documents called for by this request.  Even if some material were covered by that protection, it does not apply for the reasons explained above, especially given there is no suggestion it implicates confidential information.  During the meet and confer conference between counsel, Mr. Fowler limited the scope by stating he is not seeking information from confidential sources.  The material sought by this request cannot be obtained elsewhere and is necessary for important issues in this case, including Rapp's credibility and the details of his allegations.  Mr. Fowler has exhausted other avenues to obtain this information.

Mr. Vary's other objections likewise are without merit.  This request does not call for any attorney-client privileged or work product information, nor has Vary shown otherwise.  Nor has Vary shown that any right of privacy is implicated by this request. Vary already has known about and implicitly acquiesced to the production of his text messages with Rapp.

Mr. Vary's claims that this request calls for material outside his possession or would impose an undue burden are unsubstantiated and without merit.  Mr. Vary acknowledged at deposition he likely still possesses at least his text messages with Rapp. *See, e.g.*, Scolnick Decl., Ex. 1 (Vary Depo. Tr. at 28:16-23).  Mr. Vary also

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS

acknowledged he has not even attempted to look for any documents responsive to the Records Subpoena. *Id*. at 51:5-13, 53:19-22. His claim of undue burden therefore is unsubstantiated and illusory.

Finally, to the extent Mr. Vary is permitted to withhold any documents based on the asserted reporter's privilege or reporter's shield at this time, he should produce a log to allow the Court and parties to better evaluate that assertion. Under Federal Rule of Civil Procedure 45(e)(2)(A)(ii), Mr. Vary – as the subpoenaed party asserting privilege – must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Mr. Vary has not provided such information here. Indeed, he acknowledged at deposition he has done nothing to even look for potentially responsive documents.

### Mr. Vary's Statement Regarding Request No. 29:

Vary respectfully refers the Court to his statement regarding Request No. 1.

Dated: January 31, 2022
      Irvine, California.

Respectfully submitted,

*/s/ Chase A. Scolnick*
Jennifer L. Keller
Chase A. Scolnick
Jay P. Barron
KELLER/ANDERLE LLP
18300 Von Karman Ave., Suite 930
Irvine, California 92612
Tel: (949) 476-8700
Fax: (949) 476-0900
Email: jkeller@kelleranderle.com
      cscolnick@kelleranderle.com
      jbarron@kelleranderle.com

*Counsel for Plaintiff Kevin Spacey*
*Fowler a/k/a Kevin Spacey*

1
2  Dated: February 9, 2022
       Los Angeles, California.
3                                              /s/ Jean-Paul Jassy
4                                              Jean-Paul Jassy
                                               JASSY VICK CAROLAN LLP
5                                              355 South Grand Avenue, Suite 2450
                                               Los Angeles, California 90071
6                                              Tel: (310) 870 -7048
                                               Fax: (310) 870-7010
7                                              E-mail: jpjassy@jassyvick.com
8
9                                              *Counsel for Non-Party Journalist*
                                               *Adam Vary*
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOINT STIPULATION REGARDING MOVING PARTY'S MOTION TO COMPEL AND FOR CONTEMPT RE
ADAM VARY'S DEPOSITION AND SUBPOENA FOR PRODUCTION OF DOCUMENTS