KELLER / ANDERLE LLP
Jennifer L. Keller (SBN 84412)
jkeller@kelleranderle.com
Chase A. Scolnick (SBN 227631)
cscolnick@kelleranderle.com
Jay P. Barron (SBN 245654)
jbarron@kelleranderle.com
18300 Von Karman Ave., Suite 930
Irvine, California 92612
Tel.: (949) 476-8700

*Counsel for Moving Party Kevin
Spacey Fowler a/k/a Kevin Spacey*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY, | Case No. 2:22-mc-00030-MWF-AFM |
| Moving Party, | *Assigned to* Magistrate Judge Alexander F. MacKinnon |
| v. | **SUPPLEMENTAL MEMORANDUM BY MOVING PARTY IN SUPPORT OF MOTION TO COMPEL AND FOR CONTEMPT RE ADAM VARY'S DEPOSITION AND RESPONSE TO SUBPOENA SEEKING PRODUCTION OF DOCUMENTS** |
| ADAM VARY | |
| Responding Party. | |

Under C.D. Cal. Local Rule 37-2.3, and the Court's February 11, 2022 Order (ECF No. 6), Moving Party Kevin Spacey Fowler ("Mr. Fowler") submits this supplemental memorandum in support of his motion to compel and for contempt re responding party Adam Vary's ("Vary") deposition and response to subpoena seeking production of documents ("Motion").

I. **Vary's Various Procedural Arguments Have No Merit, And They Reinforce Why The Motion Should Be Transferred To S.D.N.Y.**

In opposition to the Motion, Vary makes various procedural arguments against the requested relief, none of which have merit.

First, Vary claims the Motion is untimely because the discovery cutoff date was January 18, 2022 and the pretrial filings had been due February 18, 2022. As an initial matter, The Honorable Lewis A. Kaplan of the Southern District of New York recently extended the latter deadline to March 4, 2022. *See Rapp v. Fowler*, Case No. 1:20-cv-09586-LAK (S.D.N.Y.) (ECF No. 139). Further, Judge Kaplan has made no order or finding that discovery motions had to be filed by the discovery completion date. Numerous discovery-related motions have been filed in *Rapp v. Fowler*, and Judge Kaplan has decided them with no reference to the deadline imagined by Vary. *See, e.g., Rapp v. Fowler*, 1:20-cv-09586-LAK (S.D.N.Y.) (ECF Nos. 135, 137, 140, 144). Mr. Fowler timely served the subpoenas at issue on this Motion and proceeded with Mr. Vary's deposition weeks before the discovery completion date. Vary cannot escape compliance simply by refusing to provide discovery and instead "running out the clock" when Mr. Fowler appropriately seeks relief for Vary's non-compliance. Such a result would be unjust and reward Vary for his obstructionist tactics.

Second, Vary disingenuously claims Mr. Fowler did not adequately meet and confer on the Motion. But Mr. Fowler's counsel engaged in numerous meet and confer conferences with Vary's counsel. *See* Scolnick Decl., ¶¶ 7-8, Ex. 6. And while the deposition questions and document requests at issue already were narrowly tailored, Mr. Fowler agreed to further limit the requested discovery by clarifying he

did not seek the identity of or information from confidential sources. *Id.* Most of the discovery at issue concerned the statements of plaintiff Anthony Rapp, who was the subject of the *Buzzfeed* article and was not a confidential source.

Third, Vary's other procedural arguments are specious. The notice of motion could not identify the assigned judge because no such assignment could be made until a new matter was generated by filing the Motion and accompanying joint stipulation. Vary's counsel knew of this. The subpoenas at issue also were properly served. Vary's counsel agreed to accept on behalf of Vary, and no objection on this basis was raised during the meet and confer process. *See, e.g.*, ECF No. 1-9. And any objection to the subpoenas based on the issuing court was waived when Vary sat for his deposition and/or was cured by Mr. Fowler's reissuance of a subpoena on December 29, 2021. And, finally, Mr. Fowler complied with C.D. Cal. Local Rule 37-1 by initiating the meet and confer process with a letter described the basis and grounds for the eventual Motion and by participating in two substantive telephone conferences with Vary's counsel. *See* Scolnick Decl., ¶¶ 7-8, Ex. 6.

Vary's procedural arguments not only are spurious but they reinforce the exceptional circumstances warranting the transfer of this subpoena-related Motion to Judge Kaplan under Federal Rule of Civil Procedure 45(f). As the trial judge overseeing this case, Judge Kaplan is best positioned to consider and weigh Vary's various procedural arguments related to the discovery cutoff date and trial date, and as to the relevance and materiality of the requested information.

## II. **Vary Incorrectly Assumed California Law Applies. New York Has A Greater Interest In This Matter.**

Even if this Court retains and does not transfer this Motion to S.D.N.Y., and applies California's choice of law rules, the outcome is that New York law should apply to this dispute. Under California's "governmental interest analysis," the court must first determine whether the laws of the two states have different laws. *See, e.g., F.D.I.C. v. CoreLogic Valuation Services*, LLC, 2011 WL 5554324, at *3-4 (C.D.

Cal. Nov. 14, 2011). Second, the court considers whether each state has an interest in having its laws applied to the case. *Id*. And, third, if the laws of the states are different, the court applies the laws of the state whose interest would be most impaired if its policy were subordinated. *Id*.

Here, Vary relies on California's "absolute" immunity against contempt, which he acknowledges differs from the balancing test required under New York law. *See* ECF 1-1 at 51. The laws therefore differ and, as Vary acknowledges, the difference "is material." *Id*. Further, New York has a clear interest in having its laws applied to this case. Plaintiff Rapp's claims are brought under New York state law and rely on New York's recently enacted Child Victims Act. Rapp is a New York citizen, and Buzzfeed – which published the article about Rapp's allegations in 2017 – is based in New York.

New York also would be substantially impaired if its laws were not applied here. Rapp's claims depend on showing that the Child Victims Act applied to it, which requires a showing that the alleged conduct would constitute a "sexual offense" under New York's Penal Law. *See* N.Y. CPLR § 214-g; *see also* N.Y. Penal Law § 130.00. The playing field would be uneven – and potentially raise due process concerns – if Mr. Fowler were deprived of potential evidence to defend against Rapp's claims where he would have been entitled to such information under the operative New York law but was deprived of such access due to another state's laws.[1] In contrast, California's interest is lessened because the information sought by Mr. Fowler primarily concerns statements made by plaintiff Rapp to Vary about the very same subject of Rapp's lawsuit. That information is highly relevant to Mr. Fowler's

---

[1] As stated in the joint stipulation and acknowledged by Vary, even California's "absolute" protection must give way when necessary for a criminal defendant. While this is a civil case, Rapp's claims depend on his ability to show that Mr. Fowler's alleged conduct constitutes a "sexual offense" under New York's Penal Law. Therefore, even if California law were to apply under a choice of law analysis, California's shield law should not bar Mr. Fowler from accessing relevant evidence important to his defense.

defense, and Rapp is not and has never been a confidential source. Other than a generalized reliance on California's "absolute" protection, Vary has identified no harm to him or others that would be done by disclosure of material Rapp has made critically relevant by his suing Mr. Fowler. And to the extent Vary had any legitimate concerns, they would be adequately protected by application of New York's qualified protection.

### III. Under Both The New York and First Amendment Tests, Vary Should Be Required To Provide The Discovery At Issue Or Be Held In Contempt.

As stated in the Motion, New York's qualified protection is similar to that afforded under the First Amendment. Under either test, Vary should be compelled to provide the requested testimony and documents because the information and testimony Vary has refused to provide is critical. Rapp's claims depend on his credibility. He likely will present the *Buzzfeed* article or similar evidence at trial to show his account of the alleged incident has remained consistent. But through text messages between Rapp and Vary produced by Rapp in this case, Mr. Fowler has learned that Rapp provided inaccurate and conflicting information to Vary. Rather than disclose those details in his article, Vary "sanitized" the narrative ultimately published in his article to protect his friend. Vary took it a step further by attempting to deceive Mr. Fowler and deprive him a legitimate opportunity to comment or respond to the story. Yet Vary has refused to answer questions or provide information about the circumstances and intent of his eleventh-hour, disingenuous attempts to get Mr. Fowler's input for his story.

Rapp's statements to Vary, and Vary's subsequent "investigation" of Rapp's claims for his article, cannot be obtained elsewhere. While Mr. Fowler has deposed Rapp and others with whom Vary spoke for his article, Vary's testimony and documents alone can provide a more complete picture of the narrative that Rapp told when he first decided to go public with his accusations and the changes in that narrative in the weeks before the article was published.

Finally, any reporters' shield Vary may otherwise apply – whether under New York law, California law, or the First Amendment – has been waived by Vary's own implicit agreement to production of his unpublished materials and discussions with Rapp. As stated in the Motion, Vary was informed by Rapp's counsel that Vary's text messages with Rapp would be produced in the case. Rather than object or intervene to protect any perceived reporter's shield protection, Vary acquiesced to that production. Vary attempts to distance himself from this waiver by claiming the disclosure of the text messages was done by Rapp, not himself. But Vary was notified and informed in advance that his unpublished materials would be disclosed, and he chose not to object or otherwise act. He cannot now attempt to undo or retract that waiver, thereby using any reporter's protection as both a sword and a shield. The deposition questions and documents requests at issue on the Motion are necessary to fully explore Rapp's statements and communications that already were partially disclosed.

### IV. Vary's Request For Payment of Expenses Should Be Denied.

In his portion of the joint stipulation, Vary also makes a passing request for monetary sanctions against Mr. Fowler. No sanctions are warranted because the Court should grant the Motion and order Vary to provide the testimony and documents to which Mr. Fowler is entitled. But even if the Court were to find against Mr. Fowler, the Motion was brought in good faith. Even if unsuccessful, Mr. Fowler and his counsel needed to pursue such discovery given its critical relevance to Rapp's claims and good faith basis for asserting this discovery must be provided by Vary. Therefore, even if the Court declines to grant Mr. Fowler the requested relief, the Motion was substantially justified and the circumstances do not warrant the imposition of any payment of expenses. *See, e.g.*, Fed. R. Civ. P. 37(a)(5)(B).

//
//
//

Dated: February 18, 2022
    Irvine, California.

Respectfully submitted,

*/s/ Chase A. Scolnick*
Jennifer L. Keller
Chase A. Scolnick
Jay P. Barron
KELLER/ANDERLE LLP
18300 Von Karman Ave., Suite 930
Irvine, California 92612
Tel: (949) 476-8700
Fax: (949) 476-0900
Email: jkeller@kelleranderle.com
       cscolnick@kelleranderle.com
       jbarron@kelleranderle.com

*Counsel for Plaintiff Kevin Spacey Fowler a/k/a Kevin Spacey*